[L. A. No. 4028.  Department One.—June 25, 1917.]

## J. M. DANZIGER, Respondent, v. E. M. BENSON, Appellant, and CHARLES MUSHRUSH et al., Respondents.

VENDOR AND PURCHASER — CONTRACTS CONCERNING SALE OF LAND—
RIGHTS OF PURCHASER FROM OPTION-HOLDER.—Where in an agreement for the sale of a section of land by the holder of an option it was provided that four deeds, each for a quarter-section, should be executed by the option-holder and deposited with a bank with instructions to deliver the deeds separately when certain amounts were paid, and thereafter the owners, at the instance of the option-holder, also executed deeds and deposited them with instructions to deliver separately as certain amounts were paid, and to obviate a discrepancy existing between the two instructions as to the amounts required to be paid to obtain delivery of the deeds, the owners entered into an agreement with the purchaser wherein they agreed to be bound by all the terms of the contract between the option-holder and the purchaser, the purchaser upon making the payment specified in his agreement to purchase is entitled to have delivered to him both deeds to a quarter-section, regardless of the fact that the amount paid was less than required by the terms of the owner's contract with the option-holder, and of subsequent

defaults in the payment of the amounts required to obtain the delivery of the other deeds.

Id.—Inconsistent Conclusions of Law—When Immaterial.—Where the facts found support the conclusions necessary to the judgment, inconsistent conclusions stated in the findings will be disregarded.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

W. W. Kaye, for Appellant.

Borton & Theile, and N. P. Moerdyke, for Respondents.

SHAW, J.—The appeal is from the judgment.

On April 18, 1910, the defendants, Mushrush, Humphreys, and Sprague, were the owners of a section of land described as section 36, township 12 north, range 22 west, in Kern County. This case involves the rights of the respective parties under certain agreements for the sale thereof. It is a somewhat unusual complication that has caused the litigation. It may best be shown by a statement of the facts taken from the findings.

On the day above mentioned Benson, who had an option from Mushrush, Humphreys, and Sprague, for the purchase of the land, agreed to sell and convey said section to Danziger for the sum of twenty-two thousand four hundred dollars. The agreement provided that four deeds, each for a quarter-section, should be signed and acknowledged by Benson and placed in escrow with the Bank of Bakersfield, together with two thousand dollars in cash, that the remainder should be paid in three installments, $3,760 in thirty days, $8,320 in six months, and $8,320 in one year. The agreement further provided that when Danziger should have paid as much as five thousand six hundred dollars of the price, he should be entitled to have delivered to him one of the deeds for a single quarter-section so put in escrow, and that for each subsequent amount of five thousand six hundred dollars paid he should be entitled to another deed for another quarter-section, except that the last deed should be delivered only upon the full payment of principal and interest of the price. The deeds were

signed and acknowledged and the money and deeds and a copy of the agreement, together with written escrow instructions in accordance therewith, were placed in escrow with the Bank of Bakersfield.

Four days afterward, on April 22, 1910, Mushrush, Humphreys, and Sprague, at the instance of Benson, signed and acknowledged four deeds each purporting to convey a different quarter-section of said land to Benson and deposited the same with the Bank of Bakersfield with written instructions to said bank to deliver said deeds to Benson upon payment of $12,160, of which two thousand dollars was to be paid on delivery of the abstract, $3,760 within thirty days, and four sums of one thousand six hundred dollars each were to be paid within one year from said date. The writing also instructed the bank to deliver any one of said deeds upon the making of any one of the one thousand six hundred dollar payments. Thus, it will be observed, Benson could not obtain a deed for any quarter-section of the land until he had first paid the total sum of $7,360, whereas his vendee, Danziger, was entitled to a deed for a quarter-section under the sale made to him by Benson upon the payment of only five thousand six hundred dollars.

After Danziger had made his first two payments for Benson, amounting to $5,760, he discovered this discrepancy. In order to obviate it he and Mushrush, Humphreys, and Sprague, on July 19, 1910, made an agreement, reciting the agreement between Benson and Danziger and that Mushrush, Humphreys, and Sprague desired to join therein, and providing that in consideration of the sums already paid to Mushrush, Humphreys, and Sprague on account of the sale by them to Benson, they should be bound by all of the terms of the contract between Benson and Danziger as though they were originally parties thereto, and that they would allow all deeds deposited by them with the Bank of Bakersfield for Benson to remain on deposit with said bank so long as the said Danziger should comply with his agreement with Benson. This agreement, together with another copy of the agreement between Benson and Danziger, was also deposited with said bank as a part of its instructions from the parties to the agreement, as agent and escrow-holder. Benson was not a party to this agreement and did not join therein.

When Danziger paid the two thousand dollars and the $3,760 as provided in the agreement and escrow instructions between himself and Benson, as they amounted to more than five thousand six hundred dollars, he thereupon became entitled to the delivery of one of the deeds deposited by Benson, as he should select. After having paid the said sums Danziger demanded of the bank the delivery of the deed from Benson to himself and of the deed from Mushrush, Humphreys, and Sprague to Benson for the southwest quarter of the section. The bank refused to deliver either of the deeds, except upon the payment of an additional sum of one thousand six hundred dollars required by the escrow instructions given to it by Mushrush, Humphreys, and Sprague upon the agreement between them and Benson. Mushrush, Humphreys, and Sprague approved this refusal and repudiated the said agreement of July 29, 1910, with Danziger. They, and Benson also, thereupon claimed that Danziger had no right to a delivery of either or any of the deeds, except upon the additional payment of one thousand six hundred dollars. Benson never paid or offered to pay either of the four installments of one thousand six hundred dollars provided for by the agreement between himself and Mushrush, Humphreys, and Sprague. The bank was also made a party to the action, but it made no active defense, and submitted the deeds to the jurisdiction and control of the court.

The court below gave judgment in favor of the plaintiff, directing that the deeds from Mushrush, Humphreys, and Sprague to Benson, and from Benson to Danziger, each for the southwest quarter of the section, be delivered to Danziger, that being the relief prayed for in the complaint. Benson alone has appealed, the other defendants being content with the judgment.

Upon the facts we have stated, the decision of the court below that plaintiff was entitled to the delivery of the two deeds required to perfect his title to the quarter-section of land was sound. The agreement of Benson entitled Danziger to the Benson deed upon the payment of five thousand six hundred dollars. It also bound Benson to convey a good title by that deed. But this was a condition which Danziger had the right to waive, if he chose. His right to the Benson deed cannot be denied. If this deed had been delivered it would have vested all the right, title, and interest of Benson

in Danziger, and its effect would be that any title afterward acquired by Benson under his agreement with Mushrush, Humphreys, and Sprague would pass by operation of law to Danziger. (Civ. Code, sec. 1106.) By his payment of $5,760 and his demand for the Benson deed, Danziger became fully entitled to it, and also became the equitable owner of the deed and of all of Benson's right, title, and interest, including Benson's right to complete the title by paying the additional one thousand six hundred dollars required by the agreement of Benson with Mushrush, Humphreys, and Sprague. Having already obtained their agreement to waive this payment and to allow their deed to be delivered on payment of the five thousand six hundred dollars, which had then been paid to them, the equitable right of Danziger to both deeds was complete and the delivery should have been made accordingly. Benson is estopped by his agreement which contained a covenant for good title to Danziger. The other parties are estopped by their agreement with Danziger that he should have their deed upon compliance with the terms of his agreement with Benson. The act of Benson's vendors in making good his positive obligation to Danziger without requiring payment of the additional one thousand six hundred dollars, though it did not relieve Benson of his obligation to pay them, was a benefit to him, since it performed for him his own contract to convey a good title to Danziger. No beneficial interest was left in Benson and he had no right to object to the delivery.

The fact that Danziger did not pay the installment of $8,320, due October 18, 1910, on his contract with Benson, does not affect his right to the first deed. He had made the payments necessary to entitle him to that deed. Thereupon, at his election, the contract became a separate agreement for the sale of the quarter-section he should select, and the price, as to that quarter, was fully paid. He was entitled to immediate delivery of the deed and to a good title. There is nothing in the contract, or in any of them, to the effect that a subsequent default in the remaining installments would terminate the right of the portion that had been paid for. But there was no subsequent default. The contract required a good title, or the means of obtaining it, on the part of Benson, as a condition, either precedent to or concurrent with, the obligation of Danziger to pay anything more than the first two

thousand dollars. Benson, by his failure to pay any of the one thousand six hundred dollar installments of his contract with Mushrush, Humphreys, and Sprague, had failed to make his proffered title good, and he never became entitled to demand further payments from Danziger. Danziger's waiver of the defect as to the first deed, for which he had already paid, did not operate as a waiver as to the remaining land.

It is immaterial whether the several conclusions of law stated in the decision of the superior court, whether formally stated as conclusions or not, are consistent with each other. The ultimate conclusions of the court below are those manifested by its judgment. If the facts found support the conclusions necessary to the judgment, inconsistent conclusions stated in the findings will be disregarded.

The action of the plaintiff is not, as plaintiff suggests, an action of detinue for the possession of the deeds. It is an action of an equitable nature to compel the performance of the contract so far as he was entitled thereto. As the case has been presented, we do not perceive that this distinction is of any importance.

This disposes of the appeal, so far as the relief given to the plaintiff is concerned. Mushrush, Humphreys, and Sprague filed a cross-complaint against Benson and Danziger to quiet their title to the section of land in controversy. The judgment quiets their title to the three quarter-sections remaining after the conveyance of the southwest quarter to Danziger as aforesaid.

Upon the facts found, this was correct. The contract between these parties was in the form of escrow instructions to the bank accompanying the deeds of Mushrush, Humphreys, and Sprague to Benson and deposited for delivery on compliance with the instructions. These instructions provided that "each payment of one thousand six hundred dollars shall entitle Benson to any one of the deeds herein inclosed," and that upon failure of Benson to make any of the payments at the times specified, the previous payments should be forfeited and the deeds should thereafter be held subject to the order of said vendors. Benson never paid, or tendered payment of, either of the installments of one thousand six hundred dollars as they fell due, or at all. His right to the delivery of the remaining deeds has therefore terminated by the forfeiture arising from his refusal to pay. (*Hicks* v. *Lovell*, 64

Cal. 14, [49 Am. Rep. 679, 27 Pac. 942].)    He did not, even at the trial, tender further payment or present any equitable ground upon which to claim an extension of the time fixed.

The judgment is affirmed.

Sloss, J., and Victor E. Shaw, J., *pro tem.*, concurred.

Hearing in Bank denied.