[Civ. No. 1295. Fourth Appellate District.—May 29, 1934.]

MAUD CARTER, as Administratrix, etc., Respondent, **v.** S. G. CARR et al., Appellants.

Julius Hansen, Walter J. Little, W. Eugene Craven and Sutherland, Dearing & Jertberg for .Appellants.

Gallaher & Ozias for Respondent.

JENNINGS, J.—Plaintiff instituted this action to recover from defendants certain sums of money alleged to have been paid by them in compliance with the provisions of a written contract for the sale of cattle entered into between plaintiff and the defendant, S. G. Carr, which contract was alleged to have been rescinded by plaintiff because of certain false and fraudulent representations made to plaintiff by Carr and by Carr's employee and agent, one Rutledge. The complaint alleged that plaintiff gave notice of rescission and offered to surrender possession of the cattle purchased and demanded return of the money paid by him under the contract together with incidental damages within a few days after he had discovered the fraud which had been practiced upon him by Carr. The complaint further alleged that Carr in making the sale of the cattle to plaintiff and in executing the contract acted as the agent for the defendant Seaboard

Dairy Credit Corporation. The prayer of the complaint was for a judgment for the various sums of money paid by plaintiff under the contract and interest thereon from the dates of payment and for specified sums of money which plaintiff claimed as compensation for damages alleged to have been sustained by him by reason of the sale and delivery of the cattle to him. When the action was called for trial the defendants objected to the impanelment of a jury on the ground that the action was strictly equitable in character, being one for rescission of a written contract. The trial court overruled the objection and ordered that a jury be impaneled for the purpose of determining the amount of damages which plaintiff might be entitled to receive if the court should decide that plaintiff was entitled to the remedy of rescission. Upon the conclusion of the trial the issue of damages was submitted to a jury, which returned a verdict in favor of plaintiff against both defendants and assessed damages in the amount of $6,325.25. The trial court subsequently made findings of fact which adopted this figure as the amount which plaintiff was entitled to receive as compensation for the false and fraudulent representations which the court found the defendants had made to plaintiff. Judgment was accordingly rendered by which it was decreed that the contract be rescinded and canceled and that plaintiff should have and recover from defendants the said sum of $6,325.25. From the judgment thus rendered the two defendants have prosecuted separate appeals.

The record herein, which is presented in the form of a bill of exceptions, shows that the following facts were developed by the evidence adduced during the trial: On March 6, 1930, plaintiff took possession of a forty-acre ranch near the town of Clovis in Fresno County. It was his intention to operate a dairy on the property and he thereupon made certain improvements with this purpose in view. At some time during the month of March, 1930, plaintiff called upon C. C. Brewer, who was then the manager of the Seaboard Dairy Credit Corporation for the Fresno district, and stated to Brewer that he wished to purchase some Guernsey cows. Brewer referred plaintiff to two men near Bakersfield. On April 10, 1930, one Roy Rutledge called at plaintiff's ranch. Rutledge stated that he was a cattle buyer for S. G. Carr and that Carr represented the Seaboard Dairy Credit Cor-

poration. Rutledge told plaintiff that he had heard from Brewer that plaintiff was in the market for some Guernsey cows. Rutledge again visited plaintiff's ranch about one week subsequent to his first visit and on this second occasion stated to plaintiff that he had received a letter from a man in Oregon who had a herd of choice Guernsey cows for sale. At the conclusion of this conversation it was agreed that Rutledge would endeavor to purchase this herd of cows for plaintiff. On May 20, 1930, the defendant S. G. Carr came to plaintiff's ranch and stated that he was the man for whom Rutledge was buying cows, that he expected to hear from Rutledge in a few days and would advise plaintiff when he heard from him. On May 26, 1930, Carr again visited plaintiff's ranch and stated that he had received a wire from Rutledge advising him that the cattle which Rutledge had purchased in Oregon would arrive in Roseville, California, on the following day. It was then arranged that plaintiff and his wife would accompany Carr to Roseville on the next day for the purpose of inspecting the cattle. The trip was made as planned and plaintiff and his wife testified that during the journey the defendant Carr made certain representations with respect to the particular locality in Oregon from which the cattle they expected to inspect had come and the freedom of this locality from such cattle diseases as tuberculosis and infectious abortion. The cattle arrived in Roseville on May 28, 1930. At the time of their arrival plaintiff again saw and talked with Rutledge who arrived on the same train which transported the cattle. Rutledge told plaintiff that he had been unable to buy the herd of Guernsey cattle which he had previously described to him but that he had procured some very choice Guernsey cows. Plaintiff and his wife then inspected the cattle and milked a number of them. It was finally agreed that plaintiff would purchase from Carr fifty-four Guernsey and Jersey cows and one bull. Pursuant to this arrangement the cattle were shipped to plaintiff's ranch. Two days after the cattle arrived at the ranch plaintiff signed a contract in writing whereby he agreed to buy the cattle from Carr for the sum of $8,791.80. At the time the contract was signed plaintiff gave Carr a check for $1,000 and on October 15, 1930, he delivered to the Seaboard Corporation a promissory note payable to Carr for the same amount and as security for its

payment assigned to the corporation a certain contract for the sale of real estate, whereby plaintiff as seller had agreed to sell and the purchaser had agreed to buy certain land for a stated consideration. The contract for the sale and purchase of the cattle provided that plaintiff should pay the balance of the purchase price amounting to $6,791.80 at the rate of $290 per month beginning on July 15, 1930. It subsequently developed that a number of the cattle thus purchased by plaintiff from the defendant Carr were affected with infectious abortion. Plaintiff made a number of payments on his contract but the returns from the dairy did not meet his expectations and he fell behind in his payments, with the result that the Seaboard Dairy Credit Corporation, assignee of the contract, took possession of the cattle. Prior to the corporation taking possession of the cattle plaintiff gave to S. G. Carr and the Seaboard Dairy Credit Corporation written notice that he rescinded the contract between Carr and himself by which he had agreed to purchase the cattle, tendered delivery of the cattle, and demanded payment of the money which he had paid under the contract, together with interest and the sum of $6,100 as compensation for the loss sustained by him by reason of diminished production of dairy products and the infection of his property and dairy equipment due to the presence of the disease among the cattle.

Appellant S. G. Carr maintains on his appeal that no evidence was submitted during the trial of the action which tended to show that he or his agent Rutledge had made any false or fraudulent representation with respect to the cattle. This contention is adopted by the appellant Seaboard Dairy Credit Corporation. It may properly be first considered herein. Obviously, if it is correct the judgment must be reversed without consideration of the various other contentions advanced by appellant Seaboard Dairy Credit Corporation.

Analysis of the evidence which the record discloses was produced relative to representations made by Carr and Rutledge impels the conclusion that the aforesaid contention may not be sustained. Respondent Carter and his wife testified that during the course of the journey from Fresno to Roseville, appellant S. G. Carr stated to them that the cattle which they then expected to inspect at Roseville had come

from Josephine County in the state of Oregon, which county "is 100%". This testimony also showed that he said that all cattle coming in or going out of Josephine County were required to be "T. B. blood tested" and that the railroad had to be furnished with a certificate of the test. Appellants seek to avoid the effect of this testimony by pointing to the fact that when the cattle arrived at Roseville it was discovered that the particular cattle which Rutledge had purchased and which formed the shipment which respondent and his wife inspected and later purchased had not come from Josephine County and that no false representation with respect to the condition of these cattle was made either by Carr or Rutledge. However, it must be conceded that whatever representations were made by appellant Carr during the journey from Fresno to Roseville referred to the cattle which respondent and his wife and Carr expected to examine at Roseville. The fact that it was later discovered that the cattle which respondent purchased were not the cattle which he had expected to obtain and that they did not come from Josephine County, Oregon, cannot relieve appellants from the effect of these representations if it appeared that any false representation respecting the condition of the cattle was made. The evidence showed that the cattle which respondent examined at Roseville had been tested for tuberculosis in Oregon but that this test was not a blood test and that the only cattle disease for which a blood test is made is the disease of infectious abortion and that the only test which discloses the presence of this disease in cattle is a blood test. There was evidence that the cattle which respondent purchased had not been blood tested. The above-mentioned testimony showed that the effect of the representation of appellant Carr was that the cattle which respondent expected to examine at Roseville had been blood tested. This was a false representation upon which, under the circumstances shown by the evidence, respondent was entitled to rely and did rely. It developed that, shortly after the cattle were delivered at respondent's ranch, the presence of the disease became apparent and a blood test, which was made by a veterinarian in the month of December, 1930, showed that among the cattle purchased from Carr by respondent there were eleven cows that were so affected

by the disease as to be classified as positive reactors and four others that were classified as suspicious.

In addition to the foregoing evidence respondent's wife, Mrs. Maud Carter, testified positively that after the cattle had been delivered at respondent's ranch but before the written contract was executed, Roy Rutledge, the admitted agent of appellant S. G. Carr, who had purchased the cattle in Oregon, stated to her in the presence of Dr. John Hoop that all of the cattle had been blood tested. Another witness, Dr. John Hoop, testified that, within a day or two after the cattle had arrived at respondent's ranch he was called to the ranch for the purpose of examining some of the cattle and that Roy Rutledge stated to him that the cattle "were blood tested and T. B. tested and one hundred per cent clean". We think, therefore, that the record discloses that there was evidence that false representations regarding the condition of the cattle were made by appellant Carr.

One of the principal contentions advanced by appellant Seaboard Dairy Credit Corporation on its appeal is that no evidence tending to prove that appellant S. G. Carr acted as the corporation's agent in the sale of the cattle to respondent was produced during the trial. If this contention is correct it is obvious that the judgment, in so far as it affects the corporation, must be reversed since the corporation could properly be held liable only if the evidence showed that S. G. Carr acted as the corporation's agent in the sale of the cattle to respondent.

In this connection various officers of the corporation and the appellant Carr testified that Carr was not at any time an agent or employee of the corporation but that on the contrary he was an independent dealer in cattle who was merely financed in his operations by the corporation. On the other hand certain evidence which was entirely circumstantial tended to show that, in purchasing the cattle which were sold by Carr to the respondent, Carr acted as an agent of the appellant corporation. The most important evidence which was produced in this regard by the respondent consisted of a number of sight drafts drawn upon Seaboard Dairy Credit Corporation on different dates in the month of May, 1930, by Roy Rutledge. To each draft was attached a bill of sale. The evidence respecting these drafts showed that they were given by Rutledge in payment for

cattle which were purchased by him in Oregon during May, 1930, and that from the cattle thus purchased respondent selected the herd of cattle mentioned in the contract which he and Carr executed on May 31, 1930. These instruments showed that the money which paid for the cattle purchased by Rutledge was furnished by appellant Seaboard Dairy Credit Corporation and showed also that the seller in each instance executed a bill of sale whereby he transferred title to the cattle described in the bill of sale to the Seaboard Dairy Credit Corporation. No evidence was produced which showed that the corporation at any future time conveyed title to Carr although the contract sought to be rescinded was made between Carr and respondent and by this contract Carr agreed to sell to respondent the same cattle covered by the heretofore mentioned bills of sale. It is a circumstance of some significance that on the very date on which the contract was executed Carr assigned his interest in the contract to the Seaboard Dairy Credit Corporation. The most significant fact demonstrated by the above-described evidence is that the owners of cattle in Oregon who sold their cattle to Rutledge immediately signed instruments which conveyed title not to Rutledge nor to Carr but to the Seaboard Dairy Credit Corporation. As heretofore pointed out, appellant corporation produced evidence both direct and circumstantial which tended to show that Carr was an independent cattle dealer and that the only part played by the corporation consisted in the furnishing of financial backing to Carr in his operations. The execution of the various bills of sale by the owners of cattle was thus readily explainable as the giving of security by Carr for the payment of money loaned to him by the corporation. Nevertheless, we cannot declare that the triers of fact may not have inferred from this circumstance that in purchasing the cattle in Oregon Carr was acting as an agent for the corporation and that such an inference would be entirely unreasonable.

The appellant corporation particularly complains of the admission of certain evidence offered by respondent and of the rejection of certain other evidence offered by this appellant.

Over the objection of the appellant corporation the respondent was permitted to testify that Rutledge, on the occasion of his first visit to respondent's ranch, made the

statement that "Mr. Carr represented the Seaboard Dairy Credit Corporation". Appellant corporation, in support of its contention that the court erred in admitting this evidence, relies on the familiar rule that the fact of agency may not be established by proof of an admission or declaration of an alleged agent. The admission by the trial court of other evidence of similar tenor is attacked on the same ground. A particular additional example is specified in certain statements which the respondent and his wife testified were made by appellant Carr after the cattle had been tested in December, 1930, and it had been discovered that a number of them were diseased. Both respondent and his wife testified that during the course of a conversation between them and Carr the latter stated that the cows "are Seaboard cows". Respondent Carter also testified that Carr made the following statement to him: "I think the Seaboard should have the cows treated and attach the expense on the tail of the contract."

It must, we think, be conceded that the fact of agency may not be established by proof of purely extra-judicial statements of one who assumes or pretends to act as an agent and that evidence of such statements is incompetent and inadmissible for such purpose. (*Spoon* v. *Sheldon*, 27 Cal. App. 765, 768 [151 Pac. 150].) It does not follow, however, that evidence of such statements is inadmissible for any purpose. It has been decided, for example, that when it has been shown that a person was given actual or ostensible authority to act for another in a particular matter, any declarations made by the agent at the time of the transaction of the business entrusted or apparently entrusted to him, and relating to such business, is admissible as a part of the *res gestae*. (*Hubback* v. *Ross*, 96 Cal. 426, 430 [31 Pac. 353].) It is settled that agency may be established by circumstantial evidence. (*Bergtholdt* v. *Porter Bros. Co.*, 114 Cal. 681, 688 [46 Pac. 738].) It often occurs that direct proof of the fact of agency is impossible. This was true in the instant case. Both appellants denied under oath that Carr was the agent of the Seaboard Dairy Credit Corporation. There were circumstances, nevertheless, which tended to show that Carr was in fact the agent of the corporation and that in dealing with the respondent he acted as the agent of the corpora-

tion although he made the contract in his own name. It is nowhere contended that Rutledge was not the agent of Carr. The manner of payment for the cattle purchased by Rutledge in Oregon was a circumstance which pointed strongly to the fact that Rutledge's principal was in fact the agent of the corporation. So far as we can see the declarations of Carr and those of his admitted agent with reference to the fact that Carr represented the corporation stand on the same footing and were properly admitted as part of the *res gestae*. ▮ Furthermore, evidence that Carr and Rutledge had made statements to the effect that the former was the agent of the corporation was properly admitted as impeaching Carr's testimony that he was not the agent of the corporation and as tending to show that respondent, in his dealings with Carr, understood that he was dealing with Carr as an agent and not as a principal. (*Lawson* v. *Steinbeck*, 44 Cal. App. 685 [186 Pac. 842].) Finally, it should be observed that this is not a case where the only evidence which tended to show that Carr was the agent of the corporation consisted of the evidence under consideration. There was other evidence competent and material which pointed strongly to the fact of agency. It was wholly circumstantial. The various conversations which occurred between Rutledge and the respondent and between Carr and the respondent were part of the entire circumstantial background of the case which the triers of fact were required to examine for the purpose of discovering whether any liability could properly be fastened upon the corporation because of the representations made to the respondent by Carr and his agent Rutledge.

▮ The evidence which it is contended the trial court improperly rejected consists of certain financial statements prepared by appellant Carr; bearing his signature, addressed to appellant Seaboard Dairy Credit Corporation and of certain sheets taken from the ledger of the Seaboard Dairy Credit Corporation which purported to show the account between the corporation and Carr. As to the financial statements, it is our opinion that they were properly excluded. They were obviously immaterial to the questions involved in the instant case and were clearly self-serving declarations. ▮ As to the ledger sheets, while it is conceded that they were likewise immaterial, it is contended

that they showed that the relationship which existed between Carr and the corporation was purely that of debtor and creditor, thus negativing any suggestion of agency. Although this latter evidence might perhaps have been admitted as part of the entire factual background of the case, we are by no means convinced that its rejection constituted reversible error. The ledger sheets offered purported to show the account between the corporation and Carr from August 5, 1927, to November 6, 1927. They contained no reference to the cattle which were the subject of the contract sought to be rescinded. They were plainly self-serving statements of the corporation. Furthermore they showed the state of the account which existed between the corporation and Carr at a time approximately two and one-half years prior to the execution of the contract which formed the basis of the present action. Finally, the effect of this evidence was entirely cumulative. The appellant corporation was permitted to show by other evidence that the relationship between itself and Carr was that of creditor and debtor. Certain of its officers and agents and the appellant Carr unequivocally denied that Carr was the agent of the corporation. We think, therefore, that, even if it be conceded that the proffered evidence might properly have been admitted, no error prejudicial to the appellant corporation was accomplished by its rejection.

The final contention which is advanced by both appellants on this appeal is that the trial court erred in admitting certain evidence relating to the question of damages and that the jury in assessing damages applied an improper measure in determining the amount of damages which respondent was entitled to recover, assuming that he was entitled to rescind the contract.

It is the established rule in California that one who has been induced by fraud to enter into an agreement has a right to seek one of two affirmative remedies. Upon discovery of the fraud, he may rescind the contract by restoring, or offering to restore, to the other party to the agreement everything of value which he has received under the contract "upon condition that such party shall do likewise". (Sec. 1691, Civ. Code.) The alternative remedy is to affirm the contract, perform the conditions imposed thereby, and sue for the recovery of such damages as he

may have suffered by reason of the fraud. (*House* v. *Piercy*, 181 Cal. 247, 251 [183 Pac. 807]; *Paxson* v. *Margulis-Stulman Co.*, 127 Cal. App. 94, 96 [15 Pac. (2d) 191].) It is obvious that the party who claims to have been defrauded may be entitled to one of the above-mentioned remedies but that he may not have both. (*Connelly* v. *J. D. Millar Realty Co.*, 131 Cal. App. 67, 70 [20 Pac. (2d) 781].) This must be true since the two remedies are inconsistent. The remedy of rescission necessarily involves a repudiation of the contract. The remedy afforded by an action for the recovery of damages suffered because of fraud involves an affirmance of the contract. The measure of damages recoverable in an action for rescission is essentially different from that which is applicable in a simple action for damages caused by fraud. In the former action, a plaintiff is entitled to recover the consideration which he gave upon restoration or offer of restoration of that which he received. He is also entitled to recover compensation for whatever consequential damages he may have suffered by reason of having entered into the contract. In the latter case, a plaintiff is entitled to recover the difference between the actual value of the property and its value if the property had been as represented plus whatever amount he may have paid out by way of legitimate expenditures. (*Hines* v. *Brode*, 168 Cal. 507 [143 Pac. 729]; *Divani* v. *Donovan*, 214 Cal. 447 [6 Pac. (2d) 247]; *Crystal Pier Amusement Co.* v. *Cannan*, 219 Cal. 184 [25 Pac. (2d) 839]; *Jackson* v. *Deauville Holding Co.*, 219 Cal. 498 [27 Pac. (2d) 643].)

Since the action which was instituted by respondent was clearly one whereby he sought to rescind a written contract on the ground of fraud and to recover consequential damages, it is apparent that the measure of damages applicable was that which prevails in actions for rescission.

Over the objection of appellants, respondent was permitted to introduce evidence that the cattle which he had agreed to purchase would have had a value of more than $150 per head if they had been sound dairy cattle, whereas, by reason of the presence of infectious abortion in the herd, they had a value of only $25 or $30 per head for beef purposes. Over the objection of appellants, respondent was also allowed to present evidence which showed that the

cows would have produced from $325 to $350 more per month in milk if they had been free from the above-mentioned disease than they did produce.

In advising the jury, the trial court, at respondent's request, gave the following instruction: "You are instructed that in determining the amount of damages suffered by the plaintiff, you will also find from the evidence in this case, the amount of loss, if any, suffered by the disease known as infectious abortion. This loss, if any, is the difference between the reasonable market value of said cattle at the time they were received by the plaintiff, and their reasonable market value if they had been free from said disease and as represented to be."

In another instruction the court advised the jury that, in determining the loss, if any, suffered by respondent because the cows produced less milk, if the jury found that less milk was produced because of the disease, the jury should subtract the reasonable market value of milk and dairy products actually produced from the reasonable market value of such products which would have been produced if the cattle had been free from the disease of infectious abortion. The reception of the above-mentioned evidence and the giving of the aforesaid instructions is assigned as erroneous in that it permitted and advised the jury to apply an improper measure of damages in arriving at the amount which respondent was entitled to recover assuming that the recovery of any amount was justified. With this contention we are impelled to agree. Since the action was one for rescission and the recovery of consequential damages the measure of damages was that which has been established in actions of this character. The element of loss of profit which is a proper element in actions where a purchaser who affirms a contract and seeks merely to recover damages caused by fraud is not a proper element in an action where the purchaser disaffirms and repudiates his contract and seeks to recover the consideration which he has paid, together with compensation for such consequential damage as he has suffered.

The trial court's findings show that the court found that respondent had paid on account of the contract a total consideration of $3,907.93. If the evidence showed that the remedy of rescission was proper, he was entitled to recover

the above-mentioned consideration and in addition to recover compensation for any special damage which he had suffered by reason of the fraud practiced upon him. The trial court, however, found that the difference in the market value of the cows as delivered and their value as represented was $6,791.80 and that the difference in the value of milk actually produced and the value which would have been produced if the cows had been sound amounted to $2,700. The court also found that respondent had suffered special damages in the cost of feed for the cattle and the cost of labor required to care for the cattle, reasonable rental value of the corral where the cattle were inclosed for a period of six months, cost of labor and material used in disinfecting the corral, and decrease in value of manure produced by the cattle, and that the total amount of such damages was $8,590. The addition of the amounts allowed for special damages and for the loss in market value of the cattle and for loss of milk production shows that the trial court found that the sum of $18,081.80 represented the total amount of damage suffered by respondent. The court further found that during the time the respondent had possession of the cattle he had received $6,268.03 from the sale of dairy products and calves. Since the court found that the respondent had paid $3,907.93 on account of the purchase price of the cattle and further found that he had received $6,268.03 from the sale of dairy products and calves, it follows that he received $2,360.10 more than he had paid out. The findings must therefore show that respondent suffered special damage amounting to $8,685.35 in order to support the judgment of $6,325.25 which was rendered in favor of respondent. The total amount of the various items of consequential damage, including the improper item of $75 for decrease in value of manure is only $8,590. It is impossible to discover from the verdict what amount the jury allowed for these consequential damages, but the trial court evidently assumed that it allowed the full amount, including the above-mentioned sum of $75 for decrease in value of manure, since the court made a finding which specifically found that by reason of the presence of the disease among the cattle, respondent had been obliged to make certain expenditures and had sustained certain financial loss, the total of the various items of which amounted

to the sum of $8,590. It is obvious, therefore, that the jury must also have made some allowance for the decrease in value of the cattle by reason of the presence of the disease in the herd and that the trial court in adopting the jury's estimate of the damage suffered by respondent fell into the same error. Because, therefore, the jury was incorrectly advised that it might apply an improper measure of damages and because evidence was received which formed the basis for the application of such improper measure of damages and further because the trial court has evidently in its findings applied the same improper measure, we entertain the opinion that the judgment must be reversed. However, since the record herein contains evidence which would support a verdict in respondent's favor, the single issue which demands a retrial is the issue of damages. (*Pretzer* v. *California Transit Co.*, 211 Cal. 202, 209 [294 Pac. 382].)

The judgment is therefore reversed and the cause is remanded for a new trial of the single issue of the amount of damages and the trial court is directed to render judgment in respondent's favor for the amount of damages which shall be so found upon a determination of that issue.

Barnard, P. J., and Marks, J., concurred.