[Civ. No. 12760.   Second Dist., Div. One.   Feb. 17, 1942.]

J. C. BALLAGH, Respondent, v. W. J. WILLIAMS, Appellant.

Baldwin Robertson for Appellant.

Gwyn S. Redwine, Musick & Burrell, Clayton Straub and James E. Ludlam for Respondent.

DRAPEAU, J. pro tem. — Four men became interested in a placer mine on the Mother Lode. In a placer mine gold

is mixed in with sand and gravel, generally a deposit in the stream bed of a living or an ancient river. If there is gold enough in the gravel to pay the cost of extracting it, and something more for the miner, it is said to be a paying proposition. If there is enormous profit for the miner, it is said to be a bonanza. But, if there is no profit, or not enough profit to pay the cost of operation, then it is said to be borrasca. In this case, and with reference to this particular mine,—and not for the first time in the history of mining,— the recovery of gold did not pay the cost of getting it out of the gravel. It was borrasca.

And so, two of the four men who became interested in the mine have resorted to the courts to determine their rights. In the beginning, the parties met in Sacramento and went to Wheatland to see the mine. Title to the property was vested in a Nevada corporation. Being impressed with the possibilities, there was an agreement that the defendant was to purchase all of the stock in the corporation, whereupon the mine would be operated by the corporation for their benefit. The purchase price of the stock was to be $10,000 down, together with the note of the corporation for $15,000, which the defendant was to endorse, and an additional payment of $5,000 out of the recovery of gold.

The defendant received from the plaintiff $3,333.33. One of the other parties put in a like amount. The defendant put up the balance of the down payment, went to Nevada and closed the deal. The terms of purchase were changed in that the defendant gave to the vendor of the stock, the note of the corporation, endorsed by him, for $20,000, instead of $15,000. Just prior to this, all of the stock in the corporation was, by appropriate corporate action, delivered to the defendant.

Thereafter, the defendant operated the mine as an individual, and not through the corporation, until he quit because it would not pay. He caused the gravel to be worked to extract the gold; he paid all of the expenses involved; and he disposed of the gold for his own account.

The plaintiff knew nothing about the increase of the principal sum of the promissory note. The defendant did not convey to the plaintiff any of the corporate stock which he received, although the plaintiff had put up his money on the understanding and with the expectation that he would receive 12½ per cent of the total stock of the corporation.

After the lapse of several months the plaintiff served the defendant with a notice of rescission, and then commenced this action, with a common count for money had and received in his complaint.

At the trial in the superior court and in the briefs and arguments before us, plaintiff and defendant each assert that the other was attempting to inflict upon him a sort of "heads I win and tails you lose" policy. The defendant asserts that the plaintiff rode with him until he found out that the mine was a failure and then wanted his money back. The plaintiff asserts that the defendant kept title to the property so that if it was a success, he would receive all of the profits, and be liable to the plaintiff only for money advanced; but if it was a failure, the defendant would then contend their relationship was a joint venture.

The trial court found for the plaintiff, and judgment was rendered against the defendant upon the money count.

Upon appeal, the defendant contends that the plaintiff could not rescind, because, especially where a mining venture is involved, the plaintiff is estopped to recover his money if the project fails while he delays to promptly rescind.

Delay to act promptly warrants a court in denying the right to rescind. (*Sanders* v. *Magill,* 9 Cal. (2d) 145 [70 Pac. (2d) 159].)

But this is a question of fact, committed to the trial court for decision. If there is substantial evidence to support that decision, it is our duty to affirm the judgment. We have examined the record, and find evidence therein which requires us to affirm the finding of the trial court that the plaintiff acted promptly upon discovery of the facts upon which his notice of rescission was based.

Laches is in the first instance a question for the determination of the trial court. Its conclusion will not be set aside by an appellate court if there is reasonable support for it in the evidence. All of the circumstances of the case are to be considered in a determination as to whether or not a party is guilty of laches. (*McMahon* v. *Grimes,* 206 Cal. 526 [275 Pac. 440]; *Alexander* v. *State Capital Co.,* 9 Cal. (2d) 304 [70 Pac. (2d) 619]; *Wolpert* v. *Gripton,* 213 Cal. 474 [2 Pac. (2d) 767].)

Next, appellant attacks one specific finding and asserts that because the court used the words, "That all of the alle-

gations'' (in the fourth grounds of defense) ''are not true,'' there has been expressed what he terms ''a negative pregnant finding.'' Therefore, it is argued that the finding does not support the judgment.

A reading of the language of the particular finding as a whole demonstrates that there is no uncertainty in it. The finding is to the effect that all the allegations of the paragraph were untrue, except certain specified facts, which were found to be true.

Findings should receive a construction which will uphold rather than defeat the judgment. (*Schomer* v. *R. L. Craig Co.*, 137 Cal. App. 620 [31 Pac. (2d) 396].)

In any event the logical defect of a negative pregnant does not apply to findings. (*McAuliffe* v. *McAuliffe*, 53 Cal. App. 352 [199 Pac. 1071].)

Next the appellant presents the contention that the plaintiff and one of the other associates interested in this mining property, not a party to this action, were joint obligees of the promise of the defendant, and that a discharge as between this associate and the defendant operated to release the defendant from any obligation to the plaintiff. This again is a question of fact upon which the trial court's finding is in favor of the plaintiff, and with which we have neither the right nor the disposition to interfere.

Finally, the appellant urges that the judgment may not rest upon a common count, there having been a rescission of a contract, unless there is a total failure of consideration. This contention may be readily disposed of by discussing the barest essentials of the case. The defendant received the money; with this money he was to purchase for the plaintiff stock in the corporation. He did purchase all of the stock of the corporation, but he failed to deliver any of it to the plaintiff. Therefore, we have to do here simply with an executory contract under which the plaintiff paid the defendant for corporate stock which was to be delivered to him, and which was not delivered.

When the vendor neglects to convey, being under a duty to do so, then the vendee is entitled to bring an action for money had and received without rescission. (*Moresco* v. *Foppiano*, 7 Cal. (2d) 242 [60 Pac. (2d) 430].)

Indeed there is testimony by the defendant upon which alone the court could have based a finding against him upon this simple issue. ''. . . I explained to him and to my

attorney at that time, that any money he had advanced to me would be taken care of when I got the deal on the Mississippi Bar'' (testimony of the defendant as to conversations with one of the other associates respecting the money which the plaintiff advanced). The Mississippi Bar is another mine owned by the defendant. ''Any arrangement I make with anybody, if it don't pay up, I intend to take care of them some other way. I intend to reimburse you for what money you have put in, and let you come in on the Mississippi Bar situation'' (further testimony of the defendant on the same subject matter).

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied March 12, 1942, and appellant's petition for a hearing by the Supreme Court was denied April 16, 1942.