[L. A. No. 19965.  In Bank.  May 6, 1947.]

A. D. VICE, Respondent, v. W. N. THACKER et al., Defendants; HARRY KUROFSKY, Appellant.

Harvey L. Silbert for Appellant.

William Ellis Lady for Respondent.

SPENCE, J.—Defendant Harry Kurofsky appeals from a judgment for plaintiff decreeing the return of certain personal property or its value, together with damages for the loss of its use, in accordance with the theory of plaintiff's action based on the rescission of the sale of said property because of fraud. Plaintiff did not prevail against defendant W. N. Thacker and has not appealed from that portion of the judgment in the latter's favor. Defendant Kurofsky premises his appeal solely upon the claim that the relief granted to plaintiff conforms neither with the evidence nor with the findings and rulings of the trial court. A review of the record in the light of well-settled rules of law leads

to the conclusion that his position cannot be maintained, and that the judgment for plaintiff should be affirmed.

According to the findings, which are in general agreement with the allegations of plaintiff's second amended complaint and are amply supported by the record, the facts out of which this controversy arose are as follows: For a number of years prior to August 9, 1943, plaintiff had conducted a shoe repair shop in Los Angeles. On the date mentioned he had on hand therein an assorted stock of merchandise and supplies necessary to the operation of his business, as well as various items of shoe repair machinery, tools and store fixtures against which there were no liens or claims of any kind. Defendant Thacker was the local representative of the Landis Machine Company of St. Louis, Missouri, manufacturers of shoemaking and repairing equipment, and he maintained a branch office and storeroom in Los Angeles. During the time plaintiff was conducting his shoe repair shop, he became acquainted with Thacker, they grew to be close friends, an advisory business relationship developed between them, and as the result plaintiff reposed implicit confidence in Thacker.

In the spring or early summer of 1943, plaintiff, an elderly man and in poor health, decided, with the advice of Thacker, to discontinue the operation of his business for a period of time—to sell his stock of merchandise and supplies but to keep and store his machinery, tools and fixtures, without expense, at Thacker's place of business, where the latter represented that ample space could be provided. Thacker offered and agreed to act as plaintiff's agent to find a purchaser for plaintiff's said merchandise and supplies, which offer was accepted by plaintiff. They then boxed up all of such stock, and Thacker stated that it should be delivered by plaintiff to any purchaser whom Thacker might find who would pay $1,000 therefor.

Through the efforts of Thacker, various prospective purchasers visited plaintiff's shop for the purpose of inspecting his merchandise and supplies and made offers therefor, which offers plaintiff rejected as insufficient in amount. Finally, on August 9, 1943, Thacker, as agent for plaintiff, represented that he had a party [defendant Kurofsky] who would purchase such stock, not including any machinery, tools or fixtures, for the sum of $1,000, to be paid as soon as such stock was delivered to Thacker's place of business. On that same

day, for and on behalf of defendant Kurofsky and while also acting as agent for plaintiff, Thacker prepared in his office a bill of sale, denominating himself as buyer and including therein all of plaintiff's machinery, tools and fixtures as well as the stock of merchandise and supplies, for the price of $1,000; and at Thacker's direction, a woman who was employed by him in his office, and who was a notary public, affixed her notarial acknowledgment to the instrument. Thacker thereupon proceeded to plaintiff's place of business; and while purporting to act as agent for plaintiff, and also acting for and on behalf of Kurofsky as his agent, Thacker presented the bill of sale to plaintiff without disclosing to him its nature, contents or effect. Rather, at that time he represented to plaintiff that the bill of sale covered only the merchandise and supplies, and that it was not necessary for plaintiff to examine or read it; and plaintiff, believing in and relying upon Thacker's statements, signed the bill of sale, without reading or knowing its contents, and delivered it to Thacker.

On the same day, August 9, 1943, Thacker executed and delivered to Kurofsky a bill of sale reciting the same consideration of $1,000 and covering all of the machinery, supplies and miscellaneous property included in the other bill of sale from plaintiff to Thacker. Kurofsky had given the stipulated sum to Thacker as his agent, with directions that he deliver it to plaintiff, and Thacker had done so. Plaintiff had no knowledge of the transactions between Thacker and Kurofsky, or that Thacker was acting as the agent of Kurofsky in paying plaintiff; nor did Thacker or Kurofsky disclose to plaintiff their relationship concerning these matters.

Thereupon plaintiff on said August 9, 1943, and while Thacker was purporting to act as his agent, delivered to Thacker the key to his shoe repair shop, with permission to remove therefrom (1) the stock of merchandise and supplies for delivery to the buyer and (2) the machinery, tools and fixtures for storage at Thacker's place of business, as previously agreed between them. Thacker gave the key to plaintiff's shop to Kurofsky, and then invited plaintiff to accompany him on a business trip outside the state. During plaintiff's absence of a few days on the trip, Kurofsky used the key, entered plaintiff's shop, and removed therefrom only the stock of merchandise and supplies. Following plaintiff's return and on or about September 6, 1943, Kurofsky and

some workmen went to plaintiff's shop to remove the machinery, tools and fixtures. Plaintiff being uncertain in the matter, telephoned Thacker, who advised him to deliver the articles to the men who came for them and that he would take care of everything for plaintiff; and plaintiff, in the belief that his property would be delivered to Thacker's place of business for storage, consented to its removal. But the machinery, tools and fixtures were not so delivered for storage; rather, all such property, in pursuance of an agreement made between Thacker and Kurofsky for the purpose of obtaining possession thereof from plaintiff, and with full knowledge of plaintiff's rights, was taken to the place of business of Kurofsky, where it was installed and put in operation, and so used for a long time thereafter.

A few days later plaintiff went to Thacker's place of business for the purpose of inspecting his property, which he believed to be stored there, and for the first time learned that it had been delivered elsewhere. Plaintiff then read and examined the bill of sale which he had signed in favor of Thacker, as buyer, and for the first time learned that it included not only the stock of merchandise and supplies, but also the machinery, tools and fixtures. Thereafter, and on or about November 1, 1943, plaintiff served on defendants a notice whereby he rescinded the purported sale of his property to Thacker as above recited.

While there is testimony of higher appraisements in the record, the trial court found that the reasonable value of the merchandise and supplies was the sum of $350 and the reasonable value of the machinery, tools and fixtures was the sum of $892.50, or a total of $1,242.50; and that as stated in his notice of rescission served upon defendants, plaintiff had offered to return to them everything of value that he had obtained from them upon his being restored to the property with which he parted, or the reasonable value thereof. The court further found that all of the property here involved was then in the possession of Kurofsky, and that plaintiff was entitled to have it returned to him or, in lieu thereof, the sum of $1,242.50, as its reasonable value; plus the sum of $1,122 damages for loss of use thereof, conditioned upon plaintiff either paying to or crediting Kurofsky with the sum of $1,000, which plaintiff had theretofore received from him, and the additional sum of $150 which Kurofsky expended

in making repairs on the property, or a total of $1,150. Judgment followed accordingly, as against Kurofsky.

■ The parties do not dispute that the record amply supports the court's finding that in all dealings between Kurofsky and Thacker concerning the sale and purchase of the involved personal property, the latter was plaintiff's agent. The evidence also discloses the existence of a confidential relationship between plaintiff, as principal, and Thacker, as agent, as the result of their extended friendship and advisory business relationship over the years; and a reliance thereupon by plaintiff with regard to the transactions here in question. (*Scovill* v. *Guy,* 205 Cal. 386, 388 [270 P. 934]; *Adams* v. *Talbott,* 61 Cal.App.2d 315, 320 [142 P.2d 775].) In the light of these considerations, the trial court was justified in concluding that the bill of sale, prepared by Thacker, with himself designated as buyer, fraudulently included plaintiff's machinery, tools and fixtures, and was presented by Thacker to plaintiff for signature without disclosing such deceit; that plaintiff relied upon the representations of such agent as to the contents of the instrument and that he need not read it; and that plaintiff's signature was fraudulently obtained thereto without his having read it or knowing that it included the additional property therein. (*Kane* v. *Mendenhall,* 5 Cal.2d 749, 758 [56 P.2d 498].)

■ But it is argued that even though it does appear that Thacker was the agent of plaintiff and fraudulently breached their confidential relationship by procuring a bill of sale from plaintiff to Thacker in which the machinery, tools and fixtures were wrongfully included, there is no evidence to show that Thacker was also acting as agent for Kurofsky in his dealings with plaintiff. While the matter of the agency connection between Thacker and Kurofsky was a sharply controverted issue, and conclusions contrary to the existence of such relation might reasonably have been drawn from the record, the weight to be given the differing testimony, as well as the inferences to be deduced therefrom, were questions for the trial court; and it need only be said that findings based on substantially conflicting evidence will not be disturbed on appeal. In support of the challenged findings the record discloses that Thacker and Kurofsky had known each other for several years; that Kurofsky had asked

Thacker to find and get for him, at the best possible price, equipment of the general kind later obtained from plaintiff; that Thacker agreed to undertake this task and told Kurofsky about plaintiff's property; and that Kurofsky went to see it at plaintiff's shop and met Thacker there. After he had inspected the property, Kurofsky told Thacker that he wanted it and instructed him to buy it; and Thacker then bought it for Kurofsky after having first obtained the money from him with which to purchase it, which money was paid to plaintiff. Thacker had the property sold to himself because plaintiff said that he wouldn't trust anybody else and he wanted Thacker to do the business for him, which facts were known to Kurofsky from conversation had with plaintiff. Kurofsky then accepted a bill of sale from Thacker, executed and delivered by the latter as seller, on the same day and covering the same property as listed in plaintiff's bill of sale to Thacker. Upon receiving from Thacker the key to plaintiff's shop, where all the property was located, and while plaintiff was absent on an automobile trip with Thacker, Kurofsky removed the stock of merchandise and supplies. Some few .weeks later Kurofsky and two workmen went to plaintiff's shop to take the remaining property, consisting of the machinery, tools and fixtures. Instead of hauling that property to Thacker's place of business for storage, Kurofsky took it to his own store, where Thacker helped him to install it. Such evidence substantially supports the court's findings to the effect that Thacker was also acting as agent for Kurofsky during all the dealings and transactions in question.

▮ It is the general rule that where an agent has assumed to act in a double capacity, a principal who has no knowledge of such dual representation—as the court found the fact to be with respect to plaintiff herein—may avoid the transaction. Actual injury is not the principle upon which the law holds such transaction voidable; rather, the law holds it voidable in order to prevent the agent from putting himself in a position where he will be tempted to betray his principal. (2 Am.Jur. § 265, p. 213.) To this point Mechem in his work on agency, second edition, volume 2, section 2138, page 1715, says: "... an agent who is relied upon to exercise, in behalf of his principal, his skill, judgment, knowledge or influence, will not be permitted without such principal's full knowledge and consent, to undertake to represent

the other party also in the same transaction. Such conduct is a fraud upon his principal, and not only will the agent not be entitled to compensation for services so rendered, but the contract or dealings made or had by the agent, while so acting also for the other party without the knowledge or consent of the principal, are not binding upon the latter, and if they still remain executory, he may repudiate them on that ground, or, if they have been executed in whole or in part, he may by acting promptly and before the rights of innocent parties have intervened, restore the consideration received, rescind the contract and recover back the property or rights with which he has parted under it. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith; the double agency is a fraud upon the principal and he is not bound." (*Gordon* v. *Beck,* 196 Cal. 768, 772-773 [239 P. 309] ; see, also, *Patterson* v. *DeHaven,* 88 Cal. App. 418, 428-429 [263 P. 568].)

In line with these observations, it was necessary for plaintiff upon discovering the duplicity of Thacker in negotiating the transactions in question, to take steps within a reasonable time thereafter to effect a rescission. (3 C.J.S. § 252a, p. 182.) The record discloses that on September 14, 1943—a day or two following plaintiff's visit to Thacker's place of business when he first learned of the misrepresentations that had been made with respect to the sale of his property—plaintiff retained an attorney but the latter failed to take any action in the matter so that, on or about October 27, 1943, plaintiff withdrew all papers which he had deposited with that attorney and employed his present counsel to establish his rights in the premises. A few days thereafter the latter prepared, and plaintiff signed, a notice of rescission for service on defendants Thacker and Kurofsky. There is no conflict in the record with respect to this chronology, and it was apparently accepted as sufficient evidence of plaintiff's effective exercise of his right to rescind. (*Cameron* v. *Evans Securities Corp.,* 119 Cal.App. 164, 172 [6 P.2d 272].)

Thus, the court found that "on or about November 1, 1943, plaintiff gave to defendants and sent them by mail under registered cover a notice wherein and whereby he rescinded the transaction mentioned above" and thereby "offered to return to defendants anything and everything

of value that he obtained from them upon his being restored to the property with which he parted or the reasonable value thereof.'' Such ''offer to restore'' was sufficient and it was not necessary that plaintiff at that time return the $1,000 which he had received in the transaction he desired to rescind. (Civ. Code, § 1691, subd. 2; *Kent* v. *Clark,* 20 Cal.2d 779, 784-785 [128 P.2d 868, 142 A.L.R. 576].) ██ Accordingly, the resulting judgment was predicated upon plaintiff's theory of relief; that upon his return of the $1,000 which he had received and his reimbursement of Kurofsky in the amount of $150, which the latter had expended in repair of the involved property, plaintiff was entitled to the recovery of said property plus damages for its loss of use in the sum of $1,122, which amount was computed at the rate of $2.00 per day for 561 days—from September 6, 1943, the date of the removal of the equipment from plaintiff's shop, to March 22, 1945, the date of decision in plaintiff's favor. Such judgment, designed to place the parties *in status quo,* comports wholly with the principles of rescission and the equities of the case as the court resolved the controverted issues. (12 C.J.S. § 77, pp. 1077-1079; § 79a, p. 1083; Black on Rescission and Cancellation, 2d ed., vol. 3, § 695, p. 1653; *Stewart* v. *Crowley,* 213 Cal. 694, 700-701 [3 P.2d 562]; see, also, *Kent* v. *Clark, supra,* 20 Cal.2d 779, 785; *Pendell* v. *Warren,* 101 Cal.App. 407, 410 [281 P. 658]; *Carter* v. *Carr,* 139 Cal.App. 15, 27 [33 P.2d 852].)

██ In this state of the record no force can be assigned to the inconsistent recital in the findings that plaintiff's ''rescission was not prompt nor timely.'' Such recital is not only directly opposed to the implied timeliness of plaintiff's notice of rescission from the finding that he thereby *''rescinded* the transaction'' in question and effectively disaffirmed the parties' dealings by his accompanying ''offer to restore,'' but it is a conclusion wholly without support in the evidence bearing upon the promptness with which plaintiff acted under the above chronology relating to his employment of successive counsel for the protection of his rights. As was said in *Marsh* v. *Marsh,* 79 Cal.App. 560, at page 571 [250 P. 411]: ''. . . if the facts found support the conclusion necessary to the judgment, inconsistent conclusions stated in the findings will be disregarded. *This rule should apply with added force to a case where the inconsistent finding urged upon the attention of the court is wholly without support in the testimony.*''

(Emphasis added.) To the same effect, see *Danziger* v. *Benson*, 175 Cal. 565, 570 [166 P. 313]; *McNutt* v. *City of Los Angeles*, 187 Cal. 245, 259 [201 P. 592]; *Ross* v. *Gentry*, 94 Cal.App. 742, 745 [271 P. 1098]; and *Klein Norton Co.* v. *Cohen*, 107 Cal.App. 325, 332 [290 P. 613]. Nor is it of any consequence here that the court at the conclusion of the trial made the following observation to plaintiff's counsel: "You follow my directions, exactly the way you have them in the findings, *leaving the rescission out.*" (Emphasis added.) While the motive of the court in adding the italicized words does not appear, they may reasonably be interpreted as referring merely to the choice of language in drafting the judgment in plaintiff's favor, and not intended to detract from the premise of plaintiff's claims. If the comment was made for any other purpose, it must be disregarded as an immaterial conclusion inconsistent with the mature deliberation of the court upon making final disposition of this case. The ensuing judgment comports only with the theory of plaintiff's cause for relief based upon rescission and the record contains substantial evidence in support thereof, as above detailed. In such circumstances, it was aptly said in *Danziger* v. *Benson, supra,* at page 570: "The ultimate conclusions of the court below are those manifested by its judgment."

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Carter, J., concurred.

SCHAUER, J., Dissenting.—I cannot agree that the finding that plaintiff's "rescission was not prompt nor timely" is wholly unsupported by the evidence and can be ignored. Nor can I agree that the so-called finding that plaintiff "rescinded the transaction" implies that the rescission was timely. The former finding is particularly addressed to a factual element essential to the effectiveness of the attempted rescission. The latter is a portion of a clause contained in the finding addressed to the question of whether and when plaintiff attempted to rescind; i. e., "about November 1, 1943, plaintiff gave to defendants and sent them by mail under registered cover a notice wherein and whereby he rescinded the transaction." Plaintiff executed his bill of sale to Thacker on August 9, 1943. He first learned of his mistake a few days after September 6, 1943. It was nearly two months later

that he attempted rescission. Whether, in the circumstances, he exercised reasonable diligence to rescind promptly (Civ. Code, § 1691) was typically a question to be decided by the trial court upon the facts of the case and its discretion in this regard should be respected by the appellate courts. (*Davis* v. *Butler* (1908), 154 Cal. 623, 628 [98 P. 1047]; *Cross* v. *Mayo* (1914), 167 Cal. 594, 605 [140 P. 283]; *French* v. *Freeman* (1923), 191 Cal. 579, 589 [217 P. 515]; *Lubarsky* v. *Richardson* (1933), 218 Cal. 27, 31 [21 P.2d 557]; *Bryan* v. *Baymiller* (1928), 95 Cal.App. 481, 487 [272 P. 1106]; *Ballagh* v. *Williams* (1942), 50 Cal.App.2d 10, 13 [122 P.2d 343].)

Even if it be assumed, contrary to the fact, that there is no evidence that plaintiff's "rescission was not prompt" there is another difficulty in the way of sustaining the judgment on the theory that this was a transaction which plaintiff could and did rescind. The notice of rescission was given about November 1, 1943. The bill of sale from Thacker to Kurofsky was executed on August 9, 1943. Therefore, if Kurofsky was a bona fide purchaser, he acquired title to the goods and plaintiff cannot recover from him. (Civ. Code, § 1744; *Keegan* v. *Kaufman Bros.* (1945), 68 Cal.App.2d 197, 202 [156 P.2d 261].) Defendant Kurofsky contends that there is no evidence that he knew of defendant Thacker's misrepresentations of the contents of the bill of sale from plaintiff to Thacker. Plaintiff points to and I have found no evidence that Kurofsky knew anything of the terms of the agreement between plaintiff and Thacker. Certainly no inference that Kurofsky knew of the duplicity of Thacker can be drawn from the price and the value of the goods, as found by the trial court; Kurofsky could have no reason to suspect, because of such price and value, that plaintiff demanded and believed he was receiving $1,000 for goods of a reasonable value (according to the express finding) of $350.

However, giving effect to all the findings, including the finding that the attempted rescission was "not prompt nor timely," the conclusion that plaintiff is entitled to recover from Kurofsky the supplies and machinery, or their value, can be upheld upon the theory of plaintiff's second cause of action. During the trial the judge remarked, "Second cause of action dismissed," but no written order to that effect was made. An order by a court of record is effective only when entered in writing. (See *Cox* v. *Tyrone Power Enterprises*

(1942), 49 Cal.App.2d 383, 394 [121 P.2d 829].) It must be assumed that at a later stage of the trial the court determined that the second cause of action should not be dismissed, since its findings can support a judgment for plaintiff only upon the theory of such cause of action. Plaintiff therein alleges that ''at all times herein mentioned without plaintiff's consent, and wrongfully, defendants withheld the possession of said personal property.'' The findings support this allegation, for it appears therefrom that the transaction whereby Kurofsky obtained possession of the property is void. Where a person, because he is deceived by fraudulent misrepresentations, manifests assent to a transaction different from that which he believes he is entering into, the transaction is void rather than voidable and ''there is no necessity for attempting to rescind that which never in fact existed.'' (*McElhaney* v. *W. E. Moyer & Co.* (1929), 101 Cal.App. 53, 57 [281 P. 87]; *C. I. T. Corp.* v. *Panac* (1944), 25 Cal.2d 547, 548-550 [154 P.2d 710, 160 A.L.R. 1285]; 6 Cal.Jur., pp. 85-86; Rest., Contracts, § 475; 5 Williston, Contracts, § 1488.)

According to the findings Thacker told plaintiff that he would deliver the supplies to any purchaser he could find who would pay $1,000 therefor; he represented to plaintiff as a fact that he had found a purchaser willing to buy the supplies for $1,000; he prepared and obtained plaintiff's signature to a document which states that plaintiff has sold both supplies and machinery for $1,000; he did not disclose to plaintiff the ''nature and effect'' of the document, represented to plaintiff that plaintiff need not read it, and plaintiff therefore signed the document ''without knowing its contents.'' These findings show that plaintiff's execution of the bill of sale to Thacker was a manifestation of assent to a transaction with terms materially different from the terms of the sale plaintiff intended to make, and that plaintiff's mistake as to the terms of the sale was induced by Thacker's knowing misstatements concerning the contents of the document. The general rule that a person who signs and accepts a written contract is charged with knowledge of its provisions, does not apply where, in reliance upon false misrepresentations of the other party, he does not seek the information which he could otherwise have obtained. Particularly is this so where there is a confidential relation between the parties. (6 Cal.Jur., pp. 85-86.) Here, the trial court found, ''plaintiff reposed implicit confidence and faith in the integrity and honesty of said

defendant [Thacker] and sought and obtained his advice in many matters and particularly concerning [the instant transaction]."

In the similar case of *Meyer* v. *Haas* (1899), 126 Cal. 560 [58 P. 1042], defendant's agent, purporting to act as plaintiff's agent also, by fraud caused plaintiff to sign a release of all claims against defendant; plaintiff was deceived into the belief that the release discharged only his claim for loss of time while he was incapacitated because of an injury caused by defendant. It was held that the consideration received by plaintiff from defendant should be considered only as payment for his claim for loss of time; that "The contract under such circumstances will be held to be what the maker of it intended it should be, and not what it was made to appear to be by the deception practiced." In the instant case, however, the parties and the trial court have proceeded on the view that the contract is void, voidable or valid as to *all* the goods. Assuming, for the purpose of testing the majority opinion, that this position is correct, nevertheless the judgment is in error as to the amount of recovery.

Upon such assumption, the plaintiff can recover, as the trial court concluded, the property or its reasonable value, together with damages for the loss of its use. But the finding that plaintiff has been damaged by loss of the use of the property for the period from September 6, 1943, to March 22, 1945, is demonstrably untenable. The court found that the damage amounted to $2.00 a day for loss of the use of the machinery. This finding was based upon testimony as to the rental value of the two machines known as a stitcher and a finisher, and plaintiff's testimony as to the amount by which his earnings would be greater when he used such machines than when he did the work by hand. Plaintiff further testified, and this testimony is not questioned, that on March 30, 1944, he bought another stitcher and another finisher of apparently equal utility for $700 (less than the amount awarded as compensation for the stitcher and finisher taken by Kurofsky). From that date, then, plaintiff was not deprived of the use of a stitcher and a finisher and was not damaged by being without such machines. It is obvious, then, that the award of $2.00 a day for the period from March 30, 1944, to March 22, 1945, is wholly unjustified.

The judgment should be reversed or, in any event, modified.