[Civ. No. 4174. First Appellate District, Division One.—April 25, 1923.]

## EMIL SCHNEIDER et al., Appellants, v. JOSEPH D. HENLEY et al., Respondents.

[1] RESCISSION—SALE OF CORPORATION STOCK—THEORY OF CASE—APPEAL.—Where the trial of an action to rescind a sale of corporation stock upon the ground of fraud was had on the theory presented by the pleadings that the stock was the property of the three defendants and sold by them to plaintiffs, but the court found that the stock was owned and sold by only one of the defendants, and the plaintiffs expressly disclaimed the existence of any conspiracy, plaintiffs cannot change the theory of their case

on appeal and claim for the first time that the sale was made pursuant to a plan formulated and carried out by the defendants.

[2] ID.—PROMPTNESS IN RESCISSION.—Subdivision 1 of section 1691 of the Civil Code requires prompt action in case of rescission, and to take advantage of this remedy a party must act immediately when he discovers the facts which entitle him to rescind and he is aware of his right of rescission.

[3] NOTICE—FACTS AND CIRCUMSTANCES—INQUIRY.—Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is equivalent to knowledge of all the facts which a reasonably diligent inquiry would disclose.

[4] RESCISSION—SALE OF STOCK—FRAUD—LACHES.—An action to rescind a sale of stock upon the ground of fraud is barred by laches where it appears from the complaint that plaintiffs had actual knowledge of the fraud and of their right to rescind several months before suit was brought and no excuse in justification of the delay is alleged or proved.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jos. A. Sanford and Glensor, Clewe & Van Dine for Appellants.

Aaron Sapiro, Milton D. Sapiro, Sapiro & Levy, James M. Thomas and Abram M. Marks for Respondents.

ST. SURE, J.—This is an action to rescind a sale of shares of stock in a mining corporation upon the ground of fraud, and to recover from defendants the sum of one thousand dollars, the price paid for the stock, with interest.

Plaintiffs appeal from a judgment of nonsuit in favor of defendants Henley and Schoenfeld and also from a judgment in favor of defendant Shannon. The two appeals were consolidated for hearing by order of this court.

Plaintiffs, in asking for a reversal, say, at the outset, that they rely upon the decision of the supreme court in the case of *Beeman* v. *Richardson,* 185 Cal. 280 [196 Pac. 774]. An effort is made to draw a parallel between the case cited and the one before us. We cannot see it. The facts and circumstances of these cases are dissimilar. The evidence here

shows that defendant Shannon was the owner of five thousand shares of the capital stock of the United Metals Company, a Nevada corporation; that the stock had formerly been owned by one Blum and had been by him deposited in the office of one Emanuel, a stock broker; that defendant Henley was employed as a bookkeeper in Emanuel's office and knew about the stock; that defendant Schoenfeld had theretofore been employed as a bookkeeper by Emanuel; that defendant Henley had known all of the parties to the action for several years, and that he had become acquainted with Schneider while in Emanuel's office and by reason of the fact that Schneider had been a client of the latter; that defendant Shannon desired to sell the stock and Henley suggested names of persons who might buy, among them that of plaintiff Schneider; that Schoenfeld, who, like Henley, had met Schneider in Emanuel's office, introduced Shannon to Schneider and a sale of the stock was effected.

Schneider testified that he had known both Schoenfeld and Henley about eight years, but that he had never met Shannon "until he was brought into my place of business in July, 1918." Shannon represented that the mine was a valuable producing one; that the ore from the mine was then being shipped and sold at a profit; that Emanuel was about to become president of the United Metals Company; that the stock offered was treasury stock of the company, had a value of twenty cents a share and was then selling in the eastern markets at that figure. "Mr. Schoenfeld told me that Mr. Henley had some stock and knew all about the affair," testified Schneider. "He told me I should go down there and get some more information and ask them how good it was. The next day I went down but I did not go down to see Mr. Henley on the question, but I went to see Mr. Emanuel. Mr. Emanuel happened to be sick, so I spoke to Mr. Henley and asked him about the matter. I said, 'Mr. Schoenfeld sent me down to see about the stock, you were interested and had stock too?' He said 'yes' and he gave me some information about the stock. . . . What made me buy the stock, Mr. Henley told me that Mr. Emanuel was interested in the company, and he was to be president. Of course, I thought if Mr. Emanuel was interested in the affair it must be good." Upon cross-examination Schneider further testified: "I knew Mr. Emanuel and relied upon

him very much for advice. I relied upon him when I bought real estate and when I bought stock I relied upon him. At the time Mr. Henley told me of the information he had, he told me it was obtained from Mr. Price and when I received those certificates of stock, I saw the name of Mr. Price written there. I didn't write to Mr. Price.''

Emanuel testified, in part, as follows: ''I have had the stock in my possession. It belonged to Mr. Blum and some of his friends. I had a conversation with Mr. Henley in regard to the United Metals Company stock at the time it was in my possession, I think it was in May, 1918. Mr. Blum at that time asked me to hold the stock in escrow, and I gave the stock to Mr. Henley to put in the safe. Mr. Henley was present at the conversation—what I mean, he wrote out the agreement, at the time Mr. Henley put it in the safe—he said that the stock was very low, that he bought it as a friend of Mr. Sanford and that he would like to dispose of it, and that he had given someone an option and I was to hold it in escrow, and Mr. Henley remarked that he could sell it too.''

Defendant Henley testified, in part, as follows: ''I had a conversation with Mr. Shannon possibly a month before the stock was sold to Mr. Schneider, and also with Mr. Schoenfeld, probably a month. I possibly suggested the name of Mr. Schneider as a buyer of that stock. I could not testify positively whether I did or not. I suggested other names. Mr. Shannon asked if I had a purchaser for the stock and asked if I knew anyone who would invest, and I told him I thought I had. I did not know the value of the property and don't know now. I think it is a valuable stock to-day. I did not tell Mr. Schoenfeld and Mr. Shannon they could refer Mr. Schneider to me for information. Mr. Schneider came to the office when Mr. Emanuel was sick. . . . He wanted to know if I knew anything about the property Mr. Shannon was selling or anything about the property of the United Metals Company; that Mr. Schoenfeld and Mr. Shannon had been up there a day or two before and he come to see me about it. I had six or eight thousand shares of stock in it at the time and I told him that I heard some mining engineers who had come in to see Mr. Emanuel and said it was a wonderful piece of property, the best piece of prop-

erty around there.  And I found out from others.  I will
tell that to Mr. Schneider to-day.''

[1]  The action is for rescission.  The trial was had on
the theory presented by the pleadings, that the stock was
the property of the three defendants and was sold to plain-
tiffs by defendants.  The court, as we have seen, granted a
nonsuit as to defendants Henley and Schoenfeld.  The stock
was owned and sold by Shannon.  Plaintiffs urge, for the
first time, upon this court, that the sale was made pursuant
to a plan formulated and carried out by the three defend-
ants.  When plaintiff Schneider was being examined in the
court below by his counsel the record shows the following
occurred:

''Q.  Now go ahead and tell everything that Mr. Schoen-
feld said or Mr. Shannon said to you.

''Mr. Sapiro.  We object to anything Mr. Shannon said on
this occasion.

''The Court: I will let you do this: I will let you con-
duct the inquiry along very broad lines, simply because you
rely upon fraud and conspiracy on the part of the defend-
ants; and of course you can't do it all at one time, and then
later I can perhaps determine what the fraud or conspiracy
was, if any was committed, and by whom.

''Mr. Glensor: I don't claim conspiracy, your honor.''

Plaintiffs cannot change the theory of their case on ap-
peal.  (*Blanc* v. *Connor*, 167 Cal. 719, 726 [141 Pac. 217];
*Merrill* v. *Kohlberg*, 29 Cal. App. 382, 387 [155 Pac. 824].)
And, while the profits of the enterprise were divided be-
tween the three defendants, the evidence clearly establishes
the fact that Shannon bought the stock from Blum, sold it
to Schneider, received Schneider's check therefor and him-
self divided the money.  It would seem that plaintiffs' right,
under the theory of the case first adopted by them, was to
recover their money from the seller of the stock to whom
it had been paid.  They could not recover against third
parties.  (*Bosley* v. *Monahan,* 137 Iowa, 650 [112 N. W.
1102]; *Wright* v. *Day,* 59 Misc. Rep. 76 [111 N. Y. Supp.
1105].)

Plaintiff Schneider testified that he ascertained the true
facts concerning the representations made about December
1, 1919.  ''From August, 1918, until I went to see Mr.
Emanuel, approximately the latter part of November, or

the 1st of December, 1919, I did not do anything with reference to the stock," testified Schneider. "I made no inquiries, I merely placed the stock somewhere and left it by itself." On June 3, 1920, about six months later, plaintiffs took steps to rescind the sale. [2] Subdivision 1 of section 1691 of the Civil Code requires prompt action in case of rescission. To take advantage of this remedy a party must act immediately when he discovers the facts which entitle him to rescind and he is aware of his right to rescission. (*Maginess* v. *Western Securities Corp.,* 38 Cal. App. 56, 59 [175 Pac. 277].) [3] Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eyes of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. (*Garstang* v. *Skinner,* 165 Cal. 721, 727 [134 Pac. 329].) [4] It appears from the complaint that plaintiffs had actual knowledge of the fraud and of their right to rescind several months before suit was brought. Defendants in their answer allege laches on the part of plaintiffs as a bar to their right to rescind. In *Marten* v. *Burns Wine Co.,* 99 Cal. 355 [33 Pac. 1107], it was held that a delay of three months was too long. In the case of *Bailey* v. *Fox,* 78 Cal. 389 [20 Pac. 868], a delay of four months was held to be fatal, and in *Gamble* v. *Tripp,* 99 Cal. 223, 227 [33 Pac. 851], the supreme court said that a delay of four and a half months, in the absence of some excuse shown therefor, was certainly not the prompt action required by the code. From an examination of authorities, it would appear that thirty days is about the utmost length of time which the courts are disposed to allow to the purchaser for rescission unless there are unusual circumstances in the case excusing longer delay. (2 Black on Rescission and Cancellation, sec. 542, p. 1279.) There was no relation of confidence induced or existing between the plaintiffs and defendants, and nothing at all which would excuse plaintiffs for failure to obey the mandatory provisions of the statute relative to rescission after discovery of the fraud. Plaintiffs neither alleged nor proved any excuse in justification of their long delay in rescinding and under the law they were guilty of laches.

In its judgment in favor of defendant Shannon the trial court found that certain representations hereinbefore men-

tioned were made by him, but, in this connection, further found: "It is not true that the plaintiffs then and there or at all relied on the inducements or representations found to have been made, nor did said representations induce plaintiffs to part with anything whatever of value, nor were they deceived or misled by any said representations, nor did plaintiffs act upon any of said representations to their detriment, nor did they part with anything of value because of said representations."

In view of what we have said upon the subject of laches we deem it unnecessary to enter into a critical discussion as to whether or not the evidence is sufficient to support the judgment of the trial court. Suffice it to say, we have carefully read the record and our impression is that the conclusion reached by the able trial judge is right. Plaintiff Schneider testified that he did not buy the stock upon any statements or representations made to him by defendant Shannon. He bought the stock because he thought Emanuel was a stockholder in the company, and if the investment was good enough for Emanuel it was good enough for him.

For the reasons given the judgment of nonsuit in favor of both of the defendants, Henley and Schoenfeld, and also the judgment in favor of defendant Shannon, are affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1923.

All the Justices present concurred.