Harry BERG, Plaintiff and Appellee,

v.

Terry HOGAN, Defendant and Appellant.

Civ. No. 10169.

Supreme Court of North Dakota.

July 15, 1982.

Pulkrabek & Tuntland, Mandan, for plaintiff and appellee; argued by Benjamin C. Pulkrabek, Mandan.

Houdek & Wolberg, Bismarck, for defendant and appellant; argued by Duane Houdek, Bismarck.

SAND, Justice.

Terry Hogan [Hogan] appealed from a district court judgment issued on remand [*Berg v. Hogan*, 311 N.W.2d 200 (N.D. 1981)] reaffirming a previous judgment granting Harry Berg [Berg] $3,490.33 plus costs of $85.00, for breach of contract.

On 7 May 1980 Berg conducted an auction of aerial and ground spraying equipment in Mandan, North Dakota, for Midstate Leasing of Mandan, a general partnership consisting of Monroe Chase and Robert Chase. Hogan was the high bidder with an offer of $19,750.00, and tendered a check in the amount of $7,500.00 as down payment to Berg. On 16 May 1980 Hogan stopped payment on the check and indicated to Berg that he wanted to make arrangements for full payment. Hogan failed or refused to make payment and Berg brought this action for the sum of $19,750.00 plus interest from 7 May 1980. The basic pleadings consisted of complaint, answer, and note of issue.

Following trial, judgment was entered in favor of Berg and against Hogan for breach of contract. Hogan appealed and this Court reversed and remanded for further findings as to when Hogan first became aware of the seller bidding on the property; if Hogan's actions after becoming aware of the bidding constituted a rescission or ratification of the sale; if his election to rescind was timely (commercial reasonableness); and any other findings of fact the trial court deemed appropriate. The trial court was also given the option of conducting a further evidentiary hearing. *Berg v. Hogan*, 311 N.W.2d 200 (N.D.1981).

On remand the trial court found that Hogan gave notice of his election to rescind on 7 July 1980, the date of his answer to the complaint, and that it was an unreasonable delay from the time he learned of the facts entitling him to rescind, which the court found to be 7 May 1980, the day of the auction. The court also, in its memorandum opinion on remand, stated that the record was silent as to when Hogan found out that he had a legal right to rescind and concluded that Hogan became aware of his right to rescind on appeal.

The trial court understood the remand required answers to certain questions. The questions and, unless otherwise indicated, the answers, summarized from the memorandum opinion which served as the court's findings of fact, are as follows:

(1) When did defendant (Hogan) know that the sellers were bidding at the auction? Trial court's answer: "I find that defendant knew sellers were bidding at the time of the sale on May 7, 1980."

(2) If defendant (Hogan) learned the facts during or shortly after the auction, did defendant use reasonable diligence to rescind promptly upon discovering the facts which entitled him to rescind if he was aware of his right to rescind? Answer: Hogan became "aware of his right to rescind" on appeal to the Supreme Court. According to the Supreme Court opinion, the defendant's Hogan's answer was his notice of rescission as of July 7, 1980. Hogan, in the latter part of May, received a letter from the seller requesting payment but he did not respond to it.

(3) Were defendant's acts subsequent to the auction a waiver of his right to rescind or ratification of the contract? Answer: In this case the defendant knew on the day of the sale that the seller had bid and had knowledge of the facts entitling him to rescind. Hagen stopped payment of the down payment check but stated he would make payment in full and negotiated for a noncompetition agreement and pilots. Hogan's reason for failing to perform was his inability to get the entire business. These acts are not consistent with rescission. They are more consistent with a ratification of the sale and the defendant is precluded from rescission.

(4) Was defendant's delay in rescinding at whatever time he found that the sellers were bidding unreasonable to his silence and a violation of commercial reasonableness requiring the seller be allowed to assume that the transaction will be completed unless the buyer does something to put him on notice to the contrary? Answer: Apparently "the buyer strung the seller along by stopping payment on the down payment check and at the same time promising full payment. He continued to negotiate for a noncompetition agreement and chief pilot without telling anyone he was not going to pay for what he had already purchased.... While all this is going on, the spraying season passes and the property has to be held until the next season in order to mitigate the damages. The defendant did not even respond to Exhibit 19 [demand for payment]. This is not commercial reasonableness."

(5) Under the facts of this case, is notice of rescission in an answer reasonable notice? Answer: The previous answers also apply to this question. Any attempt to rescind beyond the end of May 1980 is not diligent. Exhibit 19 (demand for payment) put the question squarely to the defendant and he was bound to make up his mind and make his intentions known, but he did not respond.

On the basis of the foregoing, the trial court on remand concluded that the defendant was not entitled to the remedy of rescission. Also, the trial court had the discretion to hear additional evidence touching upon the question if the seller bid on the property and, if so, when did Hogan find out that the seller bid on the property. However, the record discloses that the trial court did not ask for additional evidence on the basis that such testimony now may be "shaded." Neither does the record disclose that the parties offered to present any evidence or testimony.

Hogan on the second appeal asserted the trial court's findings of fact that Hogan unreasonably delayed his attempted rescission and that his actions constituted a ratification of the sale were based upon an incorrect interpretation of the equitable remedy of rescission and, therefore, constituted reversible error. In support of this position Hogan relied upon *Volk v. Volk*, 121 N.W.2d 701 (N.D.1963), and *Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659 (N.D.1966), and argued that rescission is governed by equitable principles and as such the timeliness or delay with which it is exercised is not a condition precedent to its invocation but rather an affirmative defense of laches which must be proved by the party seeking to avoid rescission. Hogan also relied upon the case of *Kasparek v. Johnson County Board of Health*, 288 N.W.2d 511, 520 (Iowa 1980) which in effect said that laches is an affirmative defense and the party asserting it has the burden to establish the essential elements by clear, convincing and satisfactory evidence. These principles of law have been firmly established and are accepted.

■ However, the facts of the instant case do not support Hogan's argument or the application of these principles of law as suggested by Hogan. Berg did not raise the equitable theory of laches. Berg brought the action to recover the bid price on the equipment. Hogan, in his answer, raised the issue of fraud by claiming that the bid of $19,750.00 was fraudulently inflated by bids of the seller or his agent and, therefore, did not form a binding contract. Under the pleadings of this case Hogan had the burden of proof to establish that the seller, without giving prior notice, bid on the property at the auction against the bidder. At this point the burden was not shifted to Berg. Hogan had the responsibility to establish the facts which entitled him to the remedy of rescission. The grounds for rescission in this case, pursuant to the pleadings, exist by virtue of North Dakota Century Code § 41–02–45(4), which provides as follows:

"4. If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the

goods at the price of the last good faith bid prior to the completion of the sale. This subsection shall not apply to any bid at a forced sale."

Hogan's attorney at the trial made the following statement:

"... and although I don't necessarily concede that the statute on voiding a sale because of the seller's bidding has application to this case, I think if the Court feels that that's the case, we made a general request for other relief, and I think that's included."

Be that as it may, the statutory provision applies and was considered by the trial court on remand and Hogan argued its provisions on appeal.

■ The purpose of the statute is to protect the prospective bidders at an auction sale so they will not be forced up in their bidding by secret bids on behalf of the owner. The statute specifically provides that if the owner has bid, without notice in advance of his intention to do so, the successful bidder may, if he wishes, void the sale on the ground that it was fraudulent. *Drew v. John Deere Co. of Syracuse, Inc.*, 19 A.D.2d 308, 241 N.Y.S.2d 267 (N.Y.App. Div.1963).

The rules of rescission are set out in NDCC § 9–09–04 as follows:

"Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

2. He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

This brings us to the ultimate issue: Who had the burden of proof in this case? Con-

sidering the basic action, the posture of the case, the provisions of NDCC § 41–02–45(4) and § 9–09–04, we are persuaded to conclude that the burden initially, at least, rested upon Hogan to establish by competent evidence that the seller bid on the property without prior notice and thus put into operation the provisions of the statute [NDCC § 41–02–45(4)]. Hogan testified: "I sensed that some of the equipment was being bid up by the sellers and I was competing against them."

■ The rule of law is firmly established that the right to rescind must be exercised promptly upon the discovery of the facts which entitles the party to rescind. *American Life & Casualty Insurance Co. v. Otis Hann Co.*, 124 N.W.2d 830 (N.D.1963); *Kramer v. K. O. Lee & Son Co.*, 61 N.D. 28 237 N.W. 166 (1931); 13 Am.Jur.2d *Cancellation of Instruments* § 44, p. 530; and 17A C.J.S. *Contracts* § 432, p. 531 et seq. See also, *Ballagh v. Williams*, 50 Cal.App.2d 10, 122 P.2d 343 (Div. No. 1, 1942), *Schneider v. Henley*, 61 Cal.App. 758, 215 P. 1036 (Div. No. 1, 1923). The North Dakota statute § 9–09–04 has its roots in the California statute which is substantially similar and for that reason the California cases are of some value.

The *Schneider* case, *supra*, also stated that notice of facts and circumstances which would put a person of ordinary prudence and intelligence on inquiry is, in the eyes of the law, equivalent to knowledge of all of the facts a reasonable diligent inquiry would disclose. This rule, in our opinion, is persuasive and applies to the North Dakota statute.

Under the foregoing rules, it is not only pertinent to know when Hogan found out that the seller bid on the property, but it is also pertinent to know when did Hogan acquire information from which he, as a reasonably prudent man, should have reasonably been alerted that the seller had bid on the property. When Hogan sensed that some of the equipment was being bid on by the sellers and he was competing against them, he was obligated to pursue the mat-

ter further and come to some decision. But instead of that, Hogan proceeded with actions which indicated a ratification, rather than a rescission. The first notice of rescission actually came with his answer dated 7 July 1980. We do not believe that the time or the fact when Hogan became aware that the law permitted rescission controls, but rather the date that Hogan became aware of the facts or should have been aware of the facts that determine the reasonableness of when the rescission was asserted. Even in criminal law the axiom that ignorance of the law does not justify an excuse applies, and we see no reason why the same concept should not apply to civil matters.[1] We do not believe that civil matters are subject to a greater standard than criminal matters. 17 Am.Jur.2d *Contracts* § 510, p. 992 states:

> "Many cases have held that a right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it arises, and that it may be waived by unreasonable delay or by continuing to treat the contract as a subsisting obligation. The correlative rule is that the right to rescind must be exercised within a reasonable time, or with 'reasonable promptness,' after discovery of the facts from which it arises. According to some cases, however, the question as to whether a contract has been rescinded within a proper time therefor is not necessarily to be determined by the particular amount of time which has elapsed before the attempted rescission, the important consideration being whether the period has been long enough to result in prejudice to the other party."

In *McLean v. Clapp*, 141 U.S. 429, 12 S.Ct. 29, 35 L.Ed. 804 (1891), and *Grymes v. Sanders*, 93 U.S. 55, 23 L.Ed. 798 (1876), the Court in effect said that a party desiring to rescind a contract upon the grounds of fraud must, upon the discovery of the facts act at once and announce his purpose and adhere to it. If the party is silent and continues to treat the property as his own he will be held to have waived the objection and will be conclusively bound by the contract as if the fraud had not occurred.

Hogan erroneously construes *Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659 (N.D.1966), as standing for the proposition that the reasonableness of the time within which action is taken is determined from the date that the party becomes aware of the right to rescind. *Little Missouri* uses the expression "of the right to rescind," and "aware of his rights and failed to assert them." However, these phrases are used in such a manner leaving no doubt the court had in mind that it is when the party became aware of the facts which gave rise to the rights and not when the party found out the legal rights after having known the facts. In common parlance, the expression "knew of the right to rescind" or "became aware of the right to rescind" necessarily implies when the facts became known which give rise to the right as distinguished from the law that is applied to the facts. In reading the case of *Little Missouri* there is no question that the Court had in mind when the facts became known to the parties as distinguished from when the party became aware of a legal right (the law) as applied to the facts.

Hogan, on appeal, argued that knowledge of the facts entitling a party to rescind was not controlling in itself but it was also necessary to take into account when the party became "aware of his right to re-

---

1. In *Lumpkin v. Streifel*, 308 N.W.2d 878, 880–881 (N.D.1981), we said:

    "Generally, every person is charged with knowledge of the provisions of statutes and must take notice thereof. 58 Am.Jur.2d *Notice* § 21, p. 503. The concept that ignorance of the law is no excuse has been firmly embedded in our legal proceedings. *State v. Thorstad*, 261 N.W.2d 899 (N.D.1978); *State v. Pyle*, 71 N.W.2d 342 (N.D.1955). This principle and concept applies in criminal cases and we see no valid reason why the same should not apply to civil matters. Continuing in the same vein 'neither ignorance of the ordinance ... or regulation ... is a valid defense.' 62 CJS Municipal Corporations, § 319, p. 668. But in this respect see *State v. Wendling*, 300 Minn. 511, 217 N.W.2d 768 (1974), as to judicial construction of statutes and its effect upon persons involved before the judicial interpretation."

scind." This argument implies that the party had to understand the legal significance of the facts before the party could be charged, expected or required to act promptly or else be deemed to have waived the matter.

NDCC § 9–09–04(1) contains the phrase, "and is aware of his right to rescind."

We have researched this precise question, including cases from California, from which state our statute was derived, for a clue as to what meaning or significance this phrase may have. We found no case which discussed the significance or meaning of that phrase or why it was put in the statute except the case of *Beatty v. Depue*, 78 S.D. 395, 103 N.W.2d 187, 193 (1960). In *Little Missouri, supra,* our Court, as have a number of other courts, used the expression with other language but did not discuss its significance. Even in *Beatty* the discussion was brief and limited. The Court said:

"Plaintiffs contend that the defendants delayed too long after such discovery before taking action. This argument overlooks the second requirement of our statute—awareness of their right to rescind. Accordingly, we must consider whether they acted reasonably in becoming aware of their right to rescind. A failure to so act is a waiver of the right to rescind." *Beatty v. Depue, supra* at 193.

Considering this statement together with the numerous cases which dealt with the issue of rescission and concluded that upon acquiring knowledge of the facts establishing the right to rescind requires prompt action or else the right to rescind is waived, but otherwise said nothing with respect to the meaning and significance of the phrase which was also part of the statute involved, leads us to conclude that the phrase adds very little in determining whether or not the party under the circumstances acted reasonably to rescind.

The meaning given to the phrase by the South Dakota Court in *Beatty, supra,* that the party, after acquiring the information, must act promptly to become aware of what legal significance these facts may have is sound and we have no reason to

reject it. We believe a party after acquiring knowledge of the facts has a responsibility to promptly find out, if not known, what legal rights result from them. Failure to do so may militate against the party. We also believe that once a party has the facts, the party is required to find out what legal significance results. The same concept which applies after a party acquires information indicating that certain facts may exist to find out if they do and what they are, applies to this matter. The party, in effect, has a two-fold responsibility to find out what the facts actually are and then find out what legal rights result from those facts, if the party is not aware of the resulting legal rights. Failure to do so will be construed against the party.

■ When Hogan "sensed that some of the equipment was being bid up by the sellers and [he] was competing with them," Hogan was required to find out what the true situation was and, upon having or acquiring knowledge of the situation, he was required to act promptly, not only in finding out the legal situation but also to decide what course of action he should take—such as rescind or ratify. However, in this instance, instead of acting promptly to rescind, Hogan performed acts which indicated a ratification of the sale presumably with knowledge of the facts which could have been a basis for rescission.

Applying the foregoing principles of law to the facts of the case as found by the trial court on remand, we agree with the trial court that Hogan failed to act promptly in rescinding the "sale" and that Hogan's actions were compatible with the doctrine of ratification of the sale.

■ Hogan also contended that the trial court erred in allowing Berg to recover interest paid to the bank on the loan which financed the equipment offered at the auction and the commission fee paid to the auctioneer. We disagree. The principles of law set out and discussed in *Hoffman v. Stoller*, 320 N.W.2d 786 (N.D.1982), apply to this case. Pursuant to the provisions of NDCC §§ 41–02–88 and 41–02–89 the seller

is entitled to incidental damages (including "commissions incurred") "resulting from the breach." We have not been persuaded that these items do not come within the classification of incidental damages. The seller may employ any of the remedies set out in NDCC § 41–02–82. But the seller has several options available and is not required as a matter of law to "resell" under the provisions of § 41–02–85. We believe the court applied the proper measure of damages in this case.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.