**Lydia LINDEMANN, Leona Brecht, Hilda Backfisch, and William Lindemann, Plaintiffs, Appellees and Cross-Appellants,**

v.

**Eleanor C. LINDEMANN, individually, and as personal representative over the Estate of the late Rudolph Lindemann; and for the heirs of the Rudolph Lindemann Estate, David Lindemann and Becky Lindemann, Defendants, Appellants and Cross-Appellees.**

**Civ. No. 10307.**

Supreme Court of North Dakota.

June 24, 1983.

Sperry & Erickson, Bismarck, for plaintiffs, appellees and cross-appellants; argued by Alan C. Erickson, Bismarck.

Freed, Dynes, Reichert & Buresh, Dickinson, for Eleanor C. Lindemann; argued by George T. Dynes, Dickinson.

Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for David and Becky Lindemann; argued by William C. Kelsch, Mandan.

ERICKSTAD, Chief Justice.

The defendant, Eleanor C. Lindemann, individually and as personal representative of the Rudolph Lindemann estate, appeals from an Amended Judgment on Verdict entered by the District Court of Mercer County on July 21, 1982, by which the court entered a partial judgment rescinding a partition agreement, dated March 20, 1979. The plaintiffs, Lydia ' Lindemann, Leona Brecht, Hilda Backfisch, and William Lindemann, have filed a cross-appeal from the district court's Amended Partial Adjudica-

tion, dated April 12, 1982, whereby the district court determined that Eleanor Lindemann, as personal representative of the Rudolph Lindemann estate, had authority to enter into the March 20, 1979, partition agreement. David and Becky Lindemann have filed an appeal from the district court's Order Denying Motion for Relief from Judgment, dated September 7, 1982, whereby the court denied their request for relief from the judgment of rescission which was requested by them on the ground that they were necessary parties but were not joined in the action.

As part of its July 21, 1982, judgment and of its September 7, 1982, order, the court has entered Rule 54(b), N.D.R.Civ.P., determinations that there is no just reason for delay in permitting an appeal even though a number of claims remain unresolved in the action. We affirm the Amended Partial Adjudication, dated April 12, 1982. We reverse the Amended Judgment on Verdict, dated July 21, 1982, and we remand for further proceedings to address the unresolved claims in this case.

John Lindemann died intestate during 1967. At the time of his death, he owned 720 acres of farmland in Mercer County which passed in undivided interests to his heirs as follows:

| | | |
|---|---|---|
| Lydia Lindemann, wife, ½ undivided interest | = | 360 acres |
| William Lindemann, son, ⅛ undivided interest | = | 90 acres |
| Rudolph Lindemann, son, ⅛ undivided interest | = | 90 acres |
| Leona Brecht, daughter, ⅛ undivided interest | = | 90 acres |
| Hilda Backfisch, daughter, ⅛ undivided interest | = | 90 acres |

During November, 1968, the foregoing heirs entered an agreement giving John's wife, Lydia, the right to receive all rentals and income from the property during her life.

For a period of 22 years, John's son, Rudolph, farmed this property. Rudolph died during March, 1978, and his wife, Eleanor, was appointed personal representative of his estate. Rudolph was also survived by his and Eleanor's two children, David and Becky.

On March 20, 1979, Lydia, Leona, William, Hilda, and Eleanor, acting as personal representative of Rudolph's estate, entered a contract entitled "Agreement For The Partition Of Interests In Real Estate and Lease of Real Estate" (Partition Agreement). Under the Partition Agreement, Leona, Hilda, and William each received a designated one-quarter section or 160 acres of the farmland with a life estate in the property reserved to Lydia. Eleanor and her children, David and Becky, together received the remaining 240 acres of farmland. In addition to partitioning the 720 acre tract of farmland, the Partition Agreement provided that a four-year lease which the parties had entered into with Rudolph's estate would be terminated at the end of one year, in 1979, and that the agreed-to rental of $4,650.00 per year would remain at that rate for the 1979 lease year and would be paid to Lydia.

The Partition Agreement also provided in relevant part:

"It is also agreed that the copies of the deeds attached hereto as Exhibit 'A', are the deeds that will be executed and delivered to complete the partition of the property described above."

It is undisputed that all of the deeds referred to in the Partition Agreement for accomplishing the partitioning of the farmland came into Eleanor's possession during April, 1979. It is also undisputed that all of the parties were aware at that time that the deeds were held by Eleanor and that she had delivered to David and Becky the deed which conveyed to them their share of the 240-acre tract of farmland. During May, 1979, Eleanor transferred her interest in the 240 acres to David and Becky.

Subsequently, disputes arose between Eleanor and the plaintiffs involving such matters as delivery of the deeds, removal of fence located on the farmland, removal of well fixtures, dumping of garbage, and placement of "No Hunting" signs on the property, all of which culminated in this litigation. On August 11, 1981, Lydia, Leona, Hilda, and William filed an action against Eleanor individually and as person-

al representative for Rudolph's estate, asserting, among other issues, that Eleanor had failed to deliver deeds to the plaintiffs as required under the Partition Agreement, and requesting the court to partition the farmland.

Prior to January 18, 1982, the plaintiffs were attempting to acquire from Eleanor the deeds to the property which they were entitled under the Partition Agreement and to receive damages against Eleanor for acts inconsistent with the plaintiffs' property rights under the Partition Agreement. On January 18, 1982, the plaintiffs amended their complaint to request a rescission of the Partition Agreement.

A jury trial was held on the issue of rescission through which the plaintiffs attempted to prove that the Partition Agreement was obtained by fraud and that Eleanor had breached the agreement by failing to deliver deeds to the plaintiffs. The jury returned a special verdict finding that the Partition Agreement was not obtained by fraud but that Eleanor had breached it by not delivering the deeds. Based upon that special jury verdict the court entered its Amended Judgment on Verdict, dated July 21, 1982, decreeing that the Partition Agreement "is rescinded and the same is cancelled and of no effect." Eleanor has now filed an appeal with this Court from that judgment.

Prior to discussing the issues raised by Eleanor on appeal from the July 21, 1982, judgment of rescission, we believe it is necessary to address the issue raised by the plaintiffs on their cross-appeal from the April 12, 1982, Amended Partial Adjudication whereby the court determined, as a matter of law, that Eleanor, as personal representative of Rudolph's estate, had authority to enter into the Partition Agreement. The plaintiffs assert that the court erred in making that determination.

■ The powers of Eleanor, as personal representative of Rudolph's estate, relevant to her authority to enter the Partition Agreement, are provided under Sections 30.1–18–11 and 30.1–18–15, of the North Dakota Century Code:

"30.1–18–11(3–711). *Powers of personal representatives—In general.*—Until termination of his appointment, a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court.

"30.1–18–15(3–715). *Transactions authorized for personal representatives—Exceptions.*—Except as restricted or otherwise provided by the will or by any order in a formal proceeding and subject to the priorities stated in section 30.1–20–02, a personal representative, acting reasonably for the benefit of the interested persons, may properly:

\*  \*  \*  \*  \*  \*

"6. Acquire or dispose of an asset, including land in this or another state, for cash or on credit, at public or private sale; and manage, develop, improve, exchange, partition, change the character of, or abandon an estate asset.

\*  \*  \*  \*  \*  \*

"9. Enter for any purpose into a lease as lessor or lessee, with or without option to purchase or renew, for a term within or extending beyond the period of administration.

\*  \*  \*  \*  \*  \*

"23. Sell, mortgage, or lease any real or personal property of the estate or any interest therein for cash, credit, or for part cash and part credit, and with or without security for unpaid balances."

We construe the foregoing provisions as clearly and unambiguously giving Eleanor, as personal representative of Rudolph's estate, the power to enter into the Partition Agreement whereby farmland held by Rudolph's estate was partitioned and provisions were made with regard to the leasing of that farmland.

■ As personal representative, Eleanor had a fiduciary duty to act reasonably for

the benefit of the heirs, creditors, and other interested persons in the estate, the breach of which would subject her to legal action by those interested persons. *See, Cudworth v. Cudworth,* 312 N.W.2d 331 (N.D.1981). However, the plaintiffs do not fall within the category of heirs or other interested persons in the estate which would give them standing to object to the appropriateness of her actions. We conclude, therefore, that the district court did not err in its determination that Eleanor, as personal representative of Rudolph's estate, had the power to enter into the Partition Agreement.

 On appeal, Eleanor has raised numerous issues by which she asserts that the judgment of rescission should be reversed. We conclude that the following issue is dispositive of Eleanor's appeal making it unnecessary for this Court to discuss or resolve other issues raised by her:

Whether or not the plaintiffs failed to act with reasonable promptness to rescind the Partition Agreement thereby waiving their right to do so.

With regard to this issue, Section 9–09–04, N.D.C.C., provides in part:

"*9–09–04. Rules governing rescission.*—Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; . . ."

The law is well settled that a party who fails to promptly exercise the right of rescission upon discovery of the facts necessary to rescind waives that right. *Berg v. Hogan,* 322 N.W.2d 448 (N.D.1982); *Fedorenko v. Rudman,* 71 N.W.2d 332 (N.D.1955). The determination of whether or not a party has waived the right to rescind an agreement by failure to act promptly is a question of law for the court to determine. *See, American Life and Casualty Insurance Company v. Otis Hann Company,* 124 N.W.2d 830 (N.D.1963); *Fedorenko, supra.* Having reviewed the record in this case, we conclude that the plaintiffs waived their right to rescind the Partition Agreement by failing to act with reasonable diligence to promptly rescind it.

The jury found that the plaintiffs were entitled to a rescission of the Partition Agreement because Eleanor breached the agreement by failing to deliver deeds to the plaintiffs. However, the plaintiffs did not act to rescind the Partition Agreement until they amended their complaint in January, 1982, which was more than two and one-half years after they were aware that Eleanor, having the deeds in her possession, had delivered the appropriate deeds to David and Becky, but had not delivered to the plaintiffs their deeds.

The plaintiffs commenced litigation against Eleanor during August, 1981, in which they alleged that Eleanor had failed to deliver the deeds as required by the Partition Agreement. Throughout the litigation, prior to the amendment of their complaint during January, 1982, the plaintiffs manifested their intent to enforce that agreement and to obtain damages for infringements of the property rights accorded them under it. During the two and one-half years between the time the plaintiffs were aware that Eleanor had the deeds and they sought rescission, the plaintiffs acted in various ways which were inconsistent with a rescission of the Partition Agreement. One of the provisions under the agreement was that Eleanor would not exercise her right to lease for four years the farmland owned by the other parties but that her lease would terminate in 1979 at the end of a one-year lease period. In accordance with the Partition Agreement, Eleanor's lease rights to the plaintiffs' property were relinquished in 1979. Furthermore, on May 12, 1980, at the plaintiffs' request, the district court appointed a receiver to manage, control, and collect rents on the tracts of farmland partitioned to the plaintiffs under the Partition Agreement.

In *Berg, supra,* an auctioneer brought an action against the high bidder, defendant Hogan, for alleged breach of contract. Hogan asserted that he should not be required to complete the purchase because the sellers had fraudulently inflated prices by bidding on the auctioned goods. Justice Sand, writing for a unanimous Court, concluded that Hogan had failed to act promptly to rescind the sale:

"We believe a party after acquiring knowledge of the facts has a responsibility to promptly find out, if not known, what legal rights result from them.... The party, in effect, has a two-fold responsibility to find out what the facts actually are and then find out what legal rights result from those facts, if the party is not aware of the resulting legal rights. Failure to do so will be construed against the party.

"When Hogan 'sensed that some of the equipment was being bid up by the sellers and [he] was competing with them,' Hogan was required to find out what the true situation was and, upon having or acquiring knowledge of the situation, he was required to act promptly, not only in finding out the legal situation but also to decide what course of action he should take—such as rescind or ratify." 322 N.W.2d at 453.

In this case, as in *Berg, supra,* the plaintiffs had a responsibility to ascertain what legal rights were available to them upon becoming aware, during April, 1979, that Eleanor, while delivering the appropriate deeds under the Partition Agreement to her children, proceeded to retain the deeds which were to be delivered to the plaintiffs. Upon ascertaining their legal rights the plaintiffs had the responsibility to act promptly to rescind if that is the course of action which they desired. This they did not do. The plaintiffs do not assert that they were unaware of their right to rescind nor have they demonstrated a legal excuse or justification for their delay of more than two and one-half years in seeking a rescission of the Partition Agreement.

In *Fedorenko, supra,* this Court held that the plaintiffs waived the right to rescind a mineral deed conveyance by failing to act promptly upon discovering facts which entitled them to rescind. The trial court in that case found that the plaintiffs had signed the mineral deed on the basis of a mistake of fact that it was an oil and gas lease. Assuming that the plaintiffs were entitled to cancel the deed on the ground of mistake of fact, this Court concluded that the plaintiffs had waived their right to rescind because they did not commence their rescission action until sixteen months after they had written a letter to the defendants requesting a reconveyance of the mineral deed. In this case, as in *Fedorenko, supra,* the plaintiffs did not act to rescind for a substantial period of time after becoming aware of the facts upon which they have based their right to rescind.

We hold that the plaintiffs waived their right to rescind the Partition Agreement by failing to act with reasonable diligence to promptly rescind it. In accordance with this opinion, we reverse the Amended Judgment on Verdict, dated July 21, 1982, under which the Partition Agreement was rescinded.

Because the judgment of the rescission is reversed on the ground of failure to promptly rescind, it is unnecessary to discuss the other issues raised by Eleanor on appeal. It is also unnecessary to discuss the issue raised by David and Becky on appeal of whether or not they should have been joined as party defendants to the rescission action.

In accordance with this opinion, the Amended Partial Adjudication, dated April 12, 1982, is hereby affirmed, the Amended Judgment on Verdict, dated July 21, 1982, is hereby reversed, and the case is remanded to the district court for further proceedings to require delivery of the deeds in accordance with the Partition Agreement and to resolve those claims which were not adjudicated prior to this appeal.

VANDE WALLE, PEDERSON, SAND and PAULSON, JJ., concur.